THE PRESIDENT AND TRUSTEES OF THE TOWN OF MENDOTA, Plaintiffs in Error, *v.* CHARLES E. THOMPSON, Defendant in Error.

ERROR TO LA SALLE COUNTY COURT.

To prove the existence of a corporation, it is sufficient to produce the charter, and prove acts done under it, and in conformity with it. Written proof that all the preliminary steps, etc., were taken, is not necessary.

A corporation, acting as such, cannot be questioned collaterally on the ground that it has not complied with its charter.

A municipal corporation is not dissolved because, at its organization, persons not eligible were elected trustees. If their authority is questioned, it should be by *quo warranto*.

THIS was an action of debt, for a penalty for selling liquors. There was a trial before a justice of the peace, which was appealed to the County Court of La Salle county, and tried before the judge of said court, at the June term, 1857. There was a finding for the defendant. Motion for new trial overruled.

The issues were oral. One plea was *nul tiel* corporation.

At the trial, the plaintiffs below, and plaintiffs in error here, introduced an ordinance, passed by persons purporting to be the president and trustees of the town of Mendota, and acting as such, which is as follows:

Be it ordained by the president and trustees of the town of Mendota:

SEC. 1. That the sale of all spirituous, intoxicating or mixed liquors, wine, beer, ale, porter, cider, or any fermented or malt liquors, is hereby declared to be a nuisance; and any person selling any spirituous, intoxicating or mixed liquors, wine, beer, ale, porter, cider, or any fermented or malt liquors, in any quantity, shall upon conviction, be fined five dollars for each offense, and the term each offense, as herein mentioned, shall be construed to mean the selling by the glass, quart, or in any quantity, and for each separate glass or quantity, sold or disposed of for gain or profit.

SEC. 4. Penalties incurred for a violation of any ordinance of said town of Mendota may be sued for and recovered before any justice of the peace, or before any other court having jurisdiction.

A copy of the Mendota Press, a newspaper published in Mendota, which contained said ordinance, published before the time of the sale of liquor, as offered to be proved, as hereinafter mentioned.

The plaintiffs then offered to prove that the defendant, in the

year 1856, and after the publication of said ordinance, sold, on two different occasions, to two different persons, a quantity of spirituous liquors, and that the place of sale was within the corporate limits of the said town of Mendota. To the introduction of this evidence the defendant objected. The court sustained the objection, and the plaintiffs excepted.

The plaintiffs then introduced, in evidence, the following copy of the proceedings, certified to be on file in the county clerk's office of La Salle county : 1st. The proceedings of the inhabit-ants of Mendota, at a meeting called to vote for or against incorporating said town of Mendota, showing a vote, on the 31st of October, 1854, in favor of incorporation, which proceedings were signed and certified by the chairman and clerk of the meeting. 2nd. The poll book of an election for trustees of said town, held on the 7th of November, 1854, at which five trustees, to wit, George A. Richmond, F. M. Baldwin, Benjamin West, Roswell Webster, and J. Hastings, were elected. The poll book is certified by the chairman and clerk. 3rd. The oath of office of said five trustees. 4th. A communication, addressed to the clerk of the county court, signed George A. Richmond, President of Trustees of town of Mendota, stating that an accompanying seal was that of the town of Mendota, and requesting the same to be entered as such.

A copy of proceedings, certified by the clerk of said county as on file in his office, which are—1st. The proceedings of a meeting of the white male residents of lawful age, and qualified voters of the town of Mendota on the 20th June, 1855, for the purpose of deciding whether they would be incorporated or not, certified by Benjamin West president, and Samuel P. Ives, clerk, at which the vote was for incorporation. 2nd. The oath of office of five persons, as trustees of Mendota, taken on the 28th day of June, 1855.

The plaintiffs also proved that the town of Mendota, through persons acting as president and trustees, had exercised the powers that they would have been entitled to exercise if they had been duly incorporated. The book containing the proceedings, purporting to b the various and usual acts of an incorporated town, was alo introduced in evidence, and was proved to be the book used as and for a record of the proceedings of the president and trustees of the town of Mendota. The first meeting appearing to have been held was on the 28th day of June, A. D. 1855 The only evidence of the election of the board of trustees or the year A. D. 1855 was the oral evidence of a witness, wh testified that he was present at an election of trustees in June 1855, and that such an election was held. He also testified tht there had been an annual election of trustees

since then, and that there was a record made of such election. The court decided that such evidence of the election of trustees, and the other facts mentioned, were not sufficient to prove the election of the first board, and that it was necessary to prove an election of the first board of trustees by written evidence thereof, in order to establish the fact of incorporation. On the 6th day of July, 1855, and during the term when, by said record book, J. H. Adams, Lansen Lamb, W. P. Galliday, C. H. Johnson and D. G. Bly appeared to be acting as trustees. The lines of section thirty-three, of township thirty-six north, of range one east of the third principal meridian, were declared to be the bounds and corporate limits of the town of Mendota, as appears by an entry on said book.

On the 9th of July, 1855, as appears by said book, Galliday tendered his resignation, in consequence of living out of said town ; and it appeared he did not live within said section when elected. On the same day, as appears by said book, Lamb and Johnson also resigned. It was proved that the reason they resigned was, that they were not freeholders.

The record book shows that George Wells, C. H. Gilman and John Hastings were appointed to fill the vacancies. The vacancy occasioned by the resignation of Galliday was filled by George Wells, before the resignation of Lamb and Johnson, and the record recites that they severally took the oath of office when appointed. The record contains ordinances on various subjects—orders allowing bills, appointing and removing officers, and contains a recital of the usual and ordinary acts performed by the trustees of an incorporated town ; recites the presence of the trustees and clerk (naming them); and there is a change of the names, showing different persons acting as trustees during the different years. The record contains no other evidence of the election of trustees, except mentioning them as the trustees elect having met.

And it was also proved, by oral evidence, that persons acting as the president and trustees of Mendota had, since the election in June, 1855 (and whose election was proved orally, as before mentioned), acted in that capacity.

The court found the issue of *nul tiel* corporation for the defendant.

Plaintiffs moved for a new trial. The court overruled the motion, and plaintiffs excepted.

The following are the errors assigned :

The court erred in excluding the evidence offered of the sale of liquor by the defendant.

The finding of the court on the plea of *nul tiel* corporation was against the evidence.

The court erred in deciding that it was necessary to prove on the part of the plaintiffs, by written evidence, that the first board of trustees was elected, in order to establish the fact of incorporation.

The court erred in overruling the motion of plaintiffs for a new trial, and rendering judgment for the defendant.

LELAND & LELAND, for Plaintiffs in Error.

O. C. GRAY, for Defendant in Error.

BREESE, J. The question on this record arises on the plea by defendant, in the court below, of *nul tiel corporation*, and found for him.

As a general principle, it is sufficient, in order to prove the existence of a corporation, to produce the charter, and then prove acts done under and in conformity with the charter. *Utica Ins. Co.* v. *Tilman*, 1 Wend. R. 555; *Gaines* v. *Bank of Miss.*, 7 English (Ark.) R. 769; *Bank of Manchester* v. *Allen*, 11 Verm. R. 302; 3 Wend. R. 296.

Proof that all preliminary steps were taken, and that too by written evidence, as was insisted on in this case, would produce not only great public inconvenience, but, owing to those omissions to record facts with which all public bodies are chargeable, would be impossible.

It is also a general rule, that a corporation acting as such, cannot be questioned collaterally, on the ground that it has not complied with its charter. *State* v. *Carr*, 5 N. H. R. 367.

It seems there were two efforts made to incorporate the town of Mendota—the first on the 31st Oct., 1854, and again on the 20th of June, 1855. It is objected against the regularity and legality of the last election, and which is the only objection, that it does not appear that the persons named as having been elected trustees, were in fact elected, and if they were, that it also appears that three of the five were ineligible. Galliday, by not being a resident within the limits of the corporation, and Lamb and Johnson, by not being freeholders, both of which were necessary qualifications.

The record also shows that Galliday resigned, and the rest, being a majority, elected one Wells in his place, who was qualified and took his seat as trustee; after this, Lamb and Johnson resigned, and their places were filled by the board by the election of Gilman and Hastings in pursuance of the charter, and these persons, with Adams and Bly, first duly elected, composed the board, at the time of the passage of the ordinance under which the defendant was prosecuted.

It is insisted, that by the election of three disqualified persons, the corporation was dissolved.

That certainly cannot be the rule, for as it did not appear they were not qualified until after the election, such an occurrence can be no more fatal than the election at any subsequent period of a disqualified person; and no one will say that such an election would *ipso facto* dissolve a corporation, *non constat* but they were qualified when elected; and if not, the fact can only be inquired into by the people's writ of *Quo warranto.* They cannot be attacked collaterally in this manner. *The People* v. *Watkins*, 19 Ill. R. 117.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*