WELCH (PRUSEUX v.). See Case No. 11,-456.

## Case No. 17,372.

### WELCH v. STE. GENEVIEVE.

[1 Dill. 130; 10 Am. Law Reg. (N. S.) 512; 14 Int. Rev. Rec. 93.] [1]

Circuit Court, D. Missouri. 1871.

MUNICIPAL CORPORATIONS—DISSOLUTION—RIGHTS OF CREDITORS—MANDAMUS TO COLLECT TAX, &c.

1. A municipal corporation, created by legislative act for public purposes, is not dissolved by its failure to elect officers.
[Cited in People v. Selma Irrigation Dist. (Cal.) 32 Pac. 1048.]

2. The officers of our municipal corporations do not, in the sense of the English books, constitute an integral part of the corporation, but are the mere agents or servants of the corporate body. (Arguendo by the circuit judge.)

3. Municipal corporations cannot be dissolved by the courts for non-user, or misuser of their powers or franchises. (Arguendo by the circuit judge.)

4. Where a judgment existed against a municipal corporation, having no property on which an execution could be levied, and whose duty it was to levy and collect a special tax to pay the judgment, and where the corporation was without officers and would not exercise the powers it had to supply itself with officers, the court appointed its marshal a special commissioner to assess, levy, and collect the requisite tax; but suspended the execution of the order so as to allow the corporation time to elect officers, and itself to levy and collect a tax.
[Disapproved in Rees v. Watertown, 19 Wall. (86 U. S.) 118. Cited in Milner v. Pensacola, Case No. 9,619; Kelley v. Mississippi Cent. R. Co., 1 Fed. 570.]

5. The ousting ordinance passed by constitutional convention of Missouri, and the general incorporation act of that state, in relation to towns, construed.

Motion to appoint a commissioner to levy and collect taxes to pay the plaintiff's judgment. The case is this: On the 9th day of September, 1865, the plaintiff filed in this court his declaration on certain negotiable bonds issued by the city of Ste. Genevieve, and the summons was served on the 11th day of the same September, on "Francis C. Rozier, president of the board of aldermen, and acting mayor" of the said city. The record in that case recites an appearance by counsel for the city and an agreement that the defendant will enter its appearance at the next term. At the October term, 1866, judgment by default was rendered against the defendant for $5,605. In May, 1870, the plaintiff filed his petition in this court for a mandamus, stating therein the recovery of the above-mentioned judgment; that execution had been issued and returned nulla bona; that the debt remains unpaid; that no tax to pay the same has ever been levied; that Francis C. Rozier was the last elected mayor, and certain other persons named were the last aldermen of the city; that they duly qualified when elected,

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 14 Int. Rev. Rec. 93, contains only a partial report.]

and served, and are still, in law, officers of the corporation; that no election has been held, and that the failure to elect is for the purpose of preventing the petitioner and others from collecting their bonds; that there is no way in which the petitioner can collect but by the relief prayed for, which is a writ of mandamus to compel Rozier and the aldermen named to levy a tax upon the inhabitants and property of the city sufficient to pay the judgment.

An alternative writ was issued as asked, to which, at the October term, 1870, Rozier and the other persons named made return as individuals, and not as mayor and aldermen of the city. They set out in substance in this return, that they were the mayor and aldermen of the city on the 4th day of July, 1865; that on that day the new state constitution was put into force, containing an ordinance (popularly known as the "Ousting Ordinance"), by which it was provided that within sixty days thereafter every person holding any office of honor or profit under the state, and in any municipal corporation, should take and subscribe the oath of loyalty therein prescribed, failing to take which oath within sixty days, said office, it was declared, should ipso facto become vacant, and the vacancy should be filled according to the law governing the case; and it was made penal to hold or exercise any of said offices without having taken and subscribed the oath. These persons return that they failed to take the oath, whereby their offices became vacant on the 4th day of September, 1865 (five days before the plaintiff's original suit was brought), and they have not since acted. It was also stated in the return, that in August, 1865, a pretended election was held, and city officers elected, who had taken the oath of loyalty, but that these persons refused to qualify, and never did qualify or act; but that no record of this election can be found. The return refers to the act of the legislature of the state of Missouri, approved February 19, 1866 (St. 1865, p. 911), which recites that "on account of past troubles of the country, certain incorporate towns and cities in this state have failed to hold their regular elections for offices now vacant and elective under their respective charters." and enacts "that any justice of the peace residing within the limits of any such incorporated town or city is required, on the petition of twenty-five qualified voters of such town or city, to order at once a special election to fill all vacancies in offices elective under their respective charters," &c. The return states that no election whatever has been held under the aforementioned act, approved February 19, 1866, and that the books and papers of the corporation are in the office of the clerk of the court. The return then sets up that, on the 4th day of June, 1867, the county seat of Ste. Genevieve county, acting under general laws of the state concerning municipal corporations, declared the "Town of Ste. Genevieve" incorporated by the name

of "The Inhabitants of Town of Ste. Genevieve," and a certified copy of the proceedings of the county court in this regard is filed with the return; and the respondents deny that they are officers of the city, and claim that by the constitutional ordinance aforesaid, they are absolutely forbidden to act as such officers, and they ask to be dismissed. On this return the respondents were discharged, and now Welch, the judgment creditor, files his petition stating the above facts, and that there are not now, nor have there been for some years past, any officers of any kind in said corporation; that said corporation exists; that it has no property on which to levy; that his judgment is yet unpaid, and asking this court to appoint the marshal, or some competent person, to assess, levy, and collect, upon the taxable property within the corporation, a tax sufficient to pay the judgment. It is this petition which is before the court for action.

Glover & Shepley, for plaintiff.

Thomas C. Reynolds, contra (amicus curiæ).

Before DILLON, Circuit Judge, and TREAT and KREKEL, District Judges.

DILLON, Circuit Judge. This application presents novel and interesting questions, some of which are of first impression. These will be noticed, however, only so far as may be necessary to reach a conclusion. The city corporation not now appearing by counsel, and the record of the judgment upon the bonds against the city reciting an appearance by it, and service of the summons having been made upon the last chief officer of the city, the validity of the judgment must, in this proceeding, be assumed. 1 Rev. St. 1855, § 2, art. 2; Muscatine Turn Verein v. Funck, 18 Iowa, 469.

The city of Ste. Genevieve was specially incorporated in 1849, by a public act of the legislature of the state. Laws 1849, p. 298. Its charter has been several times amended, and it was in 1851 expressly authorized to issue the bonds to the plank road company, on which the plaintiff's judgment was rendered. Act Feb. 7, 1851. And it was subsequently authorized to levy and collect annually, a special tax, to pay interest on such bonds. Act. Feb. 23, 1853.

The constitution of the corporation is after the usual model of municipal corporations, having a special charter; the inhabitants are the corporators, the mayor is the chief executive officer, and the aldermen constitute the governing body.

It is suggested that the corporation thus created has been dissolved because of its failure to elect municipal officers, and the disuse of its corporate functions since September 4th, 1865, when all of the municipal offices became absolutely vacant by force of the ousting ordinance passed by the constitutional convention. To this proposition I cannot give my assent. I deny that a corpora-

tion created by the legislature for the purposes of local municipal government can, without a provision to that effect, be dissolved by the mere failure to elect officers. The corporation is created by the charter. The officers do not constitute "the" corporation, nor does the council even constitute "a" corporation. The inhabitants of the designated locality, are the corporators. The officers are the mere servants or agents of the corporation. Municipal corporations are created for public purposes, being auxiliaries of the state to assist in local administration.

The effect at common law of the dissolution of a corporation was, that debts due by and to it were discharged, and its property reverted to the grantors. Formerly, corporations of all kinds, in England, both private and municipal, were usually created by royal charter, and the courts in that country have held, or assumed, that the loss of an integral part would dissolve a municipal corporation, or at least suspend its existence, and that its charter might, for a misuse of its franchises, be declared forfeited by judicial sentence in quo warranto, as in the famous case against the city of London in time of Charles II. Upon a critical examination of the decisions in England, I doubt whether it is settled law even in that country, that a municipal corporation can be totally dissolved in either of these ways; but if so, the doctrine has no application to our municipal corporations which are brought into existence for public purposes, by legislative act, and which do not, in the sense of the English books, consist of integral parts.

For non-user or mis-user, courts may judicially declare forfeited the charters of private, but not of public corporations.

The charter or constituent act of the corporation of Ste. Genevieve not being limited in duration, and not having been repealed by the legislature, is still in force, and the artificial body which it created still exists.

Under the constitution of the United States, which prohibits a state from passing any act which impairs the obligation of contracts, it may be doubted whether it would be possible even for the legislature of the state, notwithstanding its general supremacy over the public corporations, to dissolve a corporation so as to defeat the rights of its creditors. Van Hoffman v. Quincy, 4 Wall. [71 U. S.] 537; Butz v. Muscatine, 8 Wall. [75 U. S.] 583.

But if the state has the power, it has not attempted to exercise it; on the contrary, the act of February 19, 1866, recognizes in the clearest terms, the corporations as still existing, notwithstanding their failure to hold their elections for offices made vacant by the ousting ordinance; and provides a method by which elections may be held, and corporate officers supplied. There is much discussion in the adjudged cases, and some contrariety of opinion with respect to the right of officers to hold over in the absence of express provisions, beyond their terms, and un-

til their successors are elected and qualified. But that question is not in this case, because whatever might otherwise be the legal right of the officers of the city to hold over, they cannot do so if they fail to take the oath required by the ousting ordinance.

The officers of the city having failed to take the prescribed oath, their official existence was absolutely at an end on the 4th day of September, 1865, and at that time the corporation had no legal officers. The corporation offices became vacant, and not having been filled, are still vacant. And we have the anomaly presented of a public corporation without any officers de jure or even de facto to execute its powers or fulfil its duties.

It is now suggested that the old corporation, if not dissolved in the manner before considered, was nevertheless dissolved or superseded by the organization in 1867 of the town corporation by the county court, under the general laws of the state. Rev. St. 1865, p. 240, c. 41.

If it was thus superseded the inquiry would arise whether the town corporation was any thing more than the authorized legal successor of the old corporation, and bound to discharge its obligations.

But on examining the abovementioned statute, under which the supposed new incorporation was attempted, and on which it rests for all the legal virtue it possesses, we find that it only authorizes, in the mode therein prescribed, the incorporation of towns and cities not already incorporated. It does not empower a town or city incorporated by special charter, and which cannot therefore destroy its corporate life at its own pleasure, to abandon its charter without the consent of the legislature which gave it, thereby leaving the locality without municipal government or rule.

Legislative sanction is, in this country, indispensably necessary to the existence of every corporation; and as this new town organization is without legislative authority, it is wholly without validity, and its officers have no right in law to exercise powers under the general incorporation act; much less have they the right to exercise the functions of officers under the special charter.

The city corporation being that which was established by the legislature under the charter, and that corporation remaining in existence, although it is without officers, it is clear that no validity can attach to an unauthorized organization under the general law. Offices must be de jure, but officers may be such de facto. To say that an officer is one de facto, when the office itself is not created or authorized by the legislature, is a political solecism, having no foundation in reason nor support in law. Decorah v. Bullis, 25 Iowa, 12, 18; Hildreth's Heirs v. McIntire's Devisee, 1 J. J. Marsh. 206; People v. White, 24 Wend. 520, 540.

If the gentlemen who are claiming under the new organization to be the officers of the

town had been elected under the charter, though irregularly, and were exercising and claiming to exercise the powers given by the charter, which is still the organic act of the municipality, they would be, in the true sense of the term, officers de facto, and their acts as respects the public would be valid, and this court might, notwithstanding the irregularities in their election, issue its mandamus to them to levy and collect the tax necessary to satisfy the plaintiff's judgment.

But they were not elected under the charter, nor do they claim or assume to be officers of the city; and hence they could not lawfully levy or collect the tax; and there is no duty resting upon them in this respect which this court could compel them to execute by its writ of mandamus.

The corporation under the special charter, and its amendments, is the legal and only corporate body; the new organization is a bald usurpation of the franchises of the state, and its acts, unless ratified by the legislature, are simply void. Decorah v. Bullis, 25 Iowa, 12.

Thus we perceive the suggestion that the new organization destroyed or superseded the old corporation, to be unfounded. Not only so, but the foregoing observations answer the further suggestion that the creditor should cause a writ of mandamus to be issued and directed to the officers who are acting under the new town organization.

The way is thus cleared to the immediate question which the court is called upon to decide, viz.: Whether it will appoint its marshal, or some other proper person, to assess and collect from the property of the municipality a tax sufficient to pay the plaintiff's debt.

For that debt he has the judgment of this court. Execution has been returned nulla bona. If the corporation had officers, a mandamus to require them to levy and collect the tax would be a remedy not only proper in itself, but one to which the judgment plaintiff is entitled as of right. This is settled law in this court, and it is not necessary to cite cases upon the subject decided by the supreme court of the United States. The corporation, however, has no officers, and we fear it is but too plain that the reason why the inhabitants do not elect officers under the act of February 19, 1866, is that they cherish the delusion that they can defeat the rights of creditors, and by taking on a new organization escape old liabilities. Such notions of justice or corporate morality, if entertained, receive no countenance in the legislation or judicial decisions in Missouri, or elsewhere. Lindell v. Benton, 6 Mo. 361; Rev. St. 1865, p. 244; Butz v. Muscatine, 8 Wall. [75 U. S.] 575, 581–584; Bank of Alexandria v. Patton, 1 Rob. (Va.) 499; Van Hoffman v. Quincy, 4 Wall. [71 U. S.] 537.

This court must protect and enforce the rights of its constitutional suitors. The sending of its marshal into an indebted municipality, armed with authority to levy and collect a tax, is the exercise of a delicate and extraordinary power, to be avoided whenever possible; but which it will use whenever judgments it renders cannot otherwise be enforced. Riggs v. Johnson Co., 6 Wall. [73 U. S.] 166, 198; U. S. v. Treasurer of Muscatine Co. [Case No. 16,538]. Were there any municipal officers in esse, the court certainly would not, in the first instance, appoint its marshal, but would issue its command to them.

Under the peculiar circumstances of this case, which is without a precedent, there seems to be no remedy to the plaintiff but to make the order he asks. Anxious, however, to avoid, if may be, the carrying of this order into effect, and to allow the corporation time to elect officers and itself to levy and collect the tax, the execution of the order will be suspended for the space of three months, and the right reserved to suspend it longer if a showing be made to the court, or any of its judges, that an election of municipal officers, as provided by the law and charter, has been duly held, and that the proper body has levied, and is proceeding, according to law, to collect the taxes necessary to satisfy the plaintiff's judgment. Ordered accordingly.

NOTE. At common law, a municipal corporation, it is said, may be dissolved: 1. By act of parliament; 2. By the loss of an integral part; 3. By surrender of the corporate franchises to the crown; and 4. By forfeiture of the charter, for abuse of its franchises, judicially determined. These modes of dissolution, except the first, are believed, by the reporter, to be inapplicable to our American municipal corporations, constituted for public purposes, by legislative act. The existence of a corporation does not depend upon officers, and hence there is no such thing as dissolution by the loss of an integral part. Of course a public corporation cannot abandon or surrender at will, its corporate functions or life. The doctrine of dissolution by forfeiture for misconduct is familiar in its relation to private corporations, but it cannot properly, it would seem, apply to municipal corporations as here constituted. See Willc. Mun. Corp. c. 7, which contains an interesting examination of English cases down to that time on the subject. This author doubts whether there can be an actual and total dissolution by loss of an integral part, or by surrender; but see 2 Kyd, Corp. c. 5; Glover, Corp. c. 20; Rex v. Pasmore, 3 Term R. 241; Grant, Corp. 305, note, and Mr. Justice Campbell's learned opinion in Bacon v. Robertson, 18 How. [59 U. S.] 480; People v. Wren, 4 Scam. 275; Smith v. Smith, 3 Desaus. Eq. 557. That mere failure to elect officers will not dissolve while the capacity to elect remains. See same authorities; also, Colchester v. Seaber, 3 Burrows, 1866; Mayor, etc., of Colchester v. Brooke, 7 Q. B. 383; Muscatine Turn Verein v. Funck, 18 Iowa, 469; Com. v. Cullen, 1 Harris [13 Pa. St.] 133; President, etc., of Mendota v. Thompson, 20 Ill. 197. Contra: Lea v. Hernandez, 10 Tex. 137, but quere.

As respects dissolution by repeal, the rights of creditors of a municipal corporation are protected from invasion by the constitution of the United States. See U. S. v. Treasurer of Muscatine Co. [Case No. 16,538]; Butz v. Muscatine, 8 Wall. [75 U. S.] 575; Gelpcke v. Dubuque, 1 Wall. [68 U. S.] 175; Board of Com'rs of Tippecanoe Co. v. Cox, 6 Ind. 403; Thompson v. Lee, 3 Wall. [70 U. S.] 327; Souter v. Common Council of the City of Madison, 15 Wis. 30; Smith v. City of Appleton, 19 Wis. 468; Blake v. Portsmouth & C. R. Co., 39 N. H. 435. Compare Mumma v. Potomac

Co., 8 Pet. [33 U. S.] 281. Contra: President, etc., of Port Gibson v. Moore, 13 Smedes & M. 157, where the court seems to have overlooked the constitutional provision protecting creditors, and the case conflicts with those above cited.