### UNITED STATES BANK v. CITY OF KENDALL.

(Circuit Court, D. Kansas, Second Division. June 6, 1910.)

1. MUNICIPAL CORPORATIONS (§ 51*)—DISSOLUTION.

Where a municipal corporation has once been organized, it does not become dissolved by a mere failure to elect officers, or by a failure of such officers elected to perform corporate functions, but, for the purpose of being sued for corporate debts, continues to exist per se.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 138–140; Dec. Dig. § 51.*

Dissolution and reincorporation—effect on indebtedness, see note to City of Uvalde v. Spier, 33 C. C. A. 506.]

2. PROCESS (§ 141*)—SERVICE—RETURN—RIGHT TO ATTACK.

Where, in a suit against a city, the marshal returned that he had served the writ by delivering a true and certified copy to J., mayor, and there was no attempt to charge such officer with an individual liability, the marshal's return was conclusive on the defendant until vacated in the regular course of procedure, and J. had no capacity to appear specially and object to the service on the ground that, though he had been elected mayor of the city, the election was illegal, and that the city had passed out of existence.

[Ed. Note.—For other cases, see Process, Cent. Dig. §§ 189–192; Dec. Dig. § 141.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the United States Bank against the City of Kendall. On motion of J. E. Johnson to set aside the service. Denied.

Charles Blood Smith, for complainant.

PHILIPS, District Judge. The plaintiff brought an action in assumpsit against the defendant, a municipal corporation of Hamilton county, Kan., to recover judgment on certain improvement bonds and coupons issued by it. Writ of summons was duly issued thereon, directed to the United States marshal of this district, who made the following return thereon:

"Received the within writ March 21, 1908, and served the same upon the within-named city of Kendall, in the county of Hamilton, in the state of Kansas, by delivering to J. E. Johnson, mayor, personally, a true and certified copy of this writ with all indorsements thereon, at Randall, Kan., on the 24th day of March, 1908."

There was no appearance by the defendant at the time as required, or at any other time. But at the return term the said J. E. Johnson, appearing only for the purpose of the motion, filed motion to set aside said service of summons, on the ground that he had never been, and is not now, mayor, officer, or representative of any kind or in any capacity of the defendant city; that the said city had been for over 15 years last past, and still is, incapacitated from appearing herein as a municipal corporation; that it had ceased to exist as such for a long time prior to the commencement of this action. With the motion the said Johnson presented his affidavit showing that he resides about one-quarter of a mile west of the boundary line of what is known as the city of Kendall; that he had not resided therein for four years; that he is not the mayor of said city or town, and never had been; but admits that there had been some sort of an election held in said town about 12 years ago to elect a mayor and city council, but that the same was not legally called or held; that at said pretended election he had been elected mayor, but was never lawfully notified thereof; that he had never qualified as such mayor; and that said town had not had for about 15 years any acting mayor or city council. The plaintiff has moved to strike from the files said motion, for the reason that said Johnson is not a party to the suit, has no interest in the controversy, and, therefore, the motion is impertinent.

No question is made that the service of summons on said Johnson as mayor of the defendant city was not in form and substance conformable to the statute of Kansas. Therefore the return of the marshal is conclusive on the defendant, until set aside and vacated by order of court in due and regular course of procedure.

The question to be decided is: What right or standing in court has said Johnson to move for the vacation of said return? He is not a party to the action, and does not disclose any interest whatever in the controversy. He does not claim to be a resident within the corporate limits of the defendant city, nor does he disclose that he has any property interests therein to be in any wise affected by the judgment against the city. No judgment is asked against him, and none can be rendered against him in this action.

It is a recognized rule of legal procedure that no one not a party to the action, without any disclosed interest in the result thereof, can be permitted to thrust himself into the controversy by filing any character of pleading therein. Indeed, it would seem to confound the reason of the law, in a mere action at law, requiring pleadings to make up issues to be tried between the parties named in the action, that one not interpleaded as a party, neither for nor against whom the court could render any relief or judgment, could, sua sponte, come into the litigation for any purpose. If this motion be denied, Johnson could not sue out writ of error thereon, as there would be no final judgment. What standing would he have to prosecute a writ of error to have final judgment reviewed to which he would not be a party, and by which he would not be aggrieved? If he have no such right, he does not sustain the relation of a litigating party to any phase of the matter in controversy.

The case of Estate of Aveline, 53 Cal. 259, is apposite. A public administrator had defaulted. A proceeding was brought in the probate court against him by the successor. The estate in question was not settled at the expiration of the term of office of the defendant, in 1874. In 1876 he obtained an order for the sale of certain property of the estate which he sold. Afterwards he left the state without accounting therefor, and thereupon the probate court ordered the successor to collect the amount from the sureties of the defaulting administrator. The sureties appeared and filed an application to set aside the order of the probate court, for the reason that no citation had been issued to the defaulting administrator. The court held "that one who is not a party to a proceeding cannot make a motion therein." In the course of the opinion the court said:

"The sureties, however, were not parties to the proceeding which eventuated in the order of the 24th day of March, 1877, determining the amount due from Rogers as such administrator of the estate; and were not authorized in their own names to move that the order be set aside, and, therefore, their motion to that effect was properly set aside."

There was certainly more reason for the motion made by the sureties, who were interested in the result of the pending litigation, than for the motion of Mr. Johnson, who is in no wise interested in the result of this litigation.

In Piggott v. Kirkpatrick, 31 Ind. 261, it was decided that a motion to dismiss the action because of some defects in the petition could not be made by one not a party to the suit, nor could he be regarded as amicus curiæ.

So in Howell v. Railroad Co., 79 S. C. 493, 60 S. E. 1114, the syllabus recites that:

"Service of summons and complaint would not be set aside on the motion of one not a party to the action."

The court said:

"Copies of the summons and complaint were served on A. S. Morrall, as agents of the defendants, whereupon he made a motion before his honor, Judge Watts, to set aside the service as to all the defendants, except the Atlantic Coast Line Railroad Company, on the ground that he was not the agent of said defendants, and that they had ceased to exist. The motion was re-

fused on the ground that A. S. Morrall was not a party to the action. The order of the circuit judge is sustained by the case of Copeland v. Insurance Co., 17 S. C. 116. See, also, Beattie v. Latimer, 42 S. C. 313, 20 S. E. 53."

Pertinent to this rule is the language of the court in O'Mahoney v. Belmont, 62 N. Y. 133, where a receiver had been appointed while the adverse parties were endeavoring to compromise the matter of such appointment as made without their consent. In the opinion the court said (pages 142, 143, of 62 N. Y.):

"Where such a right exists, it is usually called in exercise upon the application of one or more of the parties in interest. While the court may upon its own motion nominate a receiver where the case requires it, such a proceeding cannot according to the regular practice be inaugurated and conducted by outside parties, who have no connection with the case, or interest in the subject-matter of the litigation. A person not having any interest cannot propose a receiver, and it is contrary to the orderly and regular proceedings of a court of justice to allow a stranger to participate in a motion for such an appointment."

Equally pertinent is the holding of the court in Steinhaus v. Enterprise Vending Machine Co., 39 Misc. Rep. 797, 81 N. Y. Supp. 282, in which the court said:

"The reason of the rule permitting appearance and answer is to enable a person wrongfully served, and yet sought to be held, to plead that he is not liable to the plaintiff because he is not the person against whom the plaintiff's alleged claim exists. In the present case, William N. Funk, before he made his motion, had been notified in writing to the effect that no claim was made against him individually, which protected him completely, and yet he attempted to compel the plaintiff to accept an answer, which, in addition to a denial of any connection on his part with the defendant corporation, also contained a general denial of the merits of the complaint. This attempt was not made in self-protection, but unmistakably in the interest of the defendant corporation, for in his affidavit he averred that 'plaintiff's attorneys intend to enter judgment against the said Enterprise Machine Company,' and then asked that 'all proceedings on the part of the plaintiff and his attorneys be stayed in the above-entitled action until five days after the service of notice of entry of an order determining this motion.' William N. Funk should not have been permitted to succeed in this attempt to answer upon the merits for the benefit of the defendant exclusively. Nor should the defendant corporation be permitted to question the validity of the service in the underhanded manner in which it was attempted."

In Life Association v. Fasset, 102 Ill. 315, in a suit against the corporation certain lands were attached. Thereafter the superintendent of insurance of another state entered special appearance, by leave of court, in the attachment proceeding, for the purpose of presenting suggestions of the dissolution of the corporation under legal proceedings therefor in his state. Motion, filed by the plaintiff in the pending suit, to strike said motion from the files, was sustained.

With some force it is urged in opposition to the foregoing general rule the plea of necessity to prevent a conceived injustice, and an invocation of the doctrine of estoppel imposed upon the plaintiff, that, while claiming the defendant corporation is brought into court by service of process on Johnson as mayor, he ought not to be heard to deny the right of Johnson to come in and assert that he was not mayor. Counsel, with keen humor, suggests that Johnson ought not to be stigmatized as ever having been mayor of an incorporated community that

had lapsed into a "prairie dog town," without the privilege of his "day in court" to vindicate his wounded pride. But a man's sensibility may be quite apart from a legal right.

The case principally relied upon to support Johnson's contention is Kelley v. Mississippi Central R. Co. (C. C.) 1 Fed. 684. It is somewhat difficult to comprehend the force and applicability of the discussion of Judge Hammond for the reason that the facts out of which the proceeding arose are not stated. One thing, however, is manifest: The suit was against a railroad company, and it is inferable that the person to whom the writ of summons was delivered was a share holder in the private corporation, and, as such, it was assumed that he had such interest in the corporate assets and property to be affected by a judgment against the corporation as ought to entitle him in advance to challenge the truth of the officer's return; otherwise, as the corporation was extinct in so far as there were no existing officers to represent it, a judgment against it would preclude any subsequent inquiry respecting such preliminary jurisdictional fact.

If the corporation as a legal entity was extinct, a judgment against it would be unavailing. Thornton v. Railway, 123 Mass. 32. Therefore there would be no occasion to invoke an appeal to the inexplicit and undefined law of ex necessitate. The only American authority cited by the learned judge tending to support the first proposition is that of Callender et al. v. Painesville & Hudson R. R. Co., 11 Ohio St. 516. The suit was against the defendant railroad company, a corporation, to recover damages for breach of contract. The writ of summons was served by leaving a copy at the principal business office of the defendant at Painesville. One Steele, on whom the service was made, or to whom the service was delivered, filed motion therein stating that he was a member and the secretary of the company, and resided at Painesville, in Lake county; that the said railroad company is not an incorporated company; that it had for its chief officer one Avery, whose usual place of business was at said Painesville, on whom service could have been had; that said railroad company is not a corporation, but only an association of persons residing in Painesville; and that the organization certificate was insufficient. He set out the certificate of organization in his affidavit.

The court in its opinion said:

"It is always the right of a party in a case to invoke the action of the court in this manner, for proper cause. And this right of making and being heard on his motion has also very properly been extended by courts to those having an interest in the subject-matter, though not parties. Thus, in actions of replevin, attachment, and in cases of distribution of money, it has been the practice to entertain and hear motions made by persons in interest, though strangers to the record."

The court then quotes the statute of the state authorizing a motion in an application for an order to the court or judge, "by any party to a suit or proceeding, or one interested therein." The opinion then proceeds as follows:

"In applications of the kind, the court will judge of the relation of the party so making the motion to the subject-matter of the action or proceeding; and the entertaining of the motion is an act of discretion on the part of the court. I think that the person making the motion in this case is certainly

not shown by the motion to have been a mere intruder. Steele represents himself, in his motion, to be a member of an unincorporated company, against which judgment is sought in the action. And, if so, a judgment rendered against the company, by the name of the company, would be a judgment against all the members collectively, including him as an individual member of the association. Any member of the company, under these circumstances, I think, might very properly be admitted to make this motion, and be heard upon it, in the case."

That case does not by any means support the right of Johnson. He was not a member of the defendant municipal corporation. He says he does not reside within its limits. He does not appear to have therein any property interests possibly to be subjected to the payment of any judgment against the city.

The case of Rand et al. v. Proprietors of the Upper Locks and Canals in the Conn. River, 3 Day (Conn.) 441, was a suit against a corporation wherein the writ commanded the sheriff to summon James Bull, one of the principal proprietors and directors of said company, and as proprietor of the Upper Locks and Canals of the Connecticut River in the County of Hamilton. The corporation itself put in a plea of abatement for the want of service. Bull also pleaded in abatement that no service was made upon the corporation only by leaving a copy with James Bull of Hartford, Conn.; whereas, the corporation was established only within the jurisdiction of Massachusetts. No question was raised as to Bull's right to so plead. It was sufficient that the corporation itself interposed the plea of abatement. All the court said in its opinion is in the following paragraph:

"In this case the writ and process has been no otherwise served than by leaving a copy thereof at the usual place of abode of James Bull of Hartford, Conn., who is described therein as one of the principal proprietors, and one of the directors of the corporation. Serving a summons upon a private individual of a corporation is not due and legal notice to the corporate body."

Neither is the right of Johnson aided by the ruling in the case of Mumma v. Potomac Co., 8 Pet. 281, 8 L. Ed. 945. The plea in abatement was signed by one Chase, as attorney for the bank against which judgment had been rendered, setting up the dissolution of the bank by the act of the Legislature of Indiana, and its extinction thereby. Not only was the plea thus made in effect in the name of the bank, but no question was raised by opposing counsel as to the right of the attorney to thus represent the bank. More than that, the parties to the pending suit filed an agreed statement of facts submitting the question of fact and law as to whether or not the corporation was nonexistent at the time of the rendition of the judgment against it. The court simply said:

"The dissolution of the corporation, under the acts of Virginia and Maryland, cannot, in any just sense, be considered within the clause of the Constitution of the United States as impairing the obligation of the contracts of the company by those states, any more than the death of a private person can be said to impair the obligation of his contracts."

And further it was stated that by the act of incorporation itself it was made the duty of the president and directors of the company, so long as there shall remain any creditor of the Potomac Company, who shall not have vested his demand or stock in the Chesepeake & Ohio

Canal Company, to pay such creditor annually, etc.; so that there was provided an equitable mode of distributing the assets of the company among its creditors.

So, in Bronson v. La Crosse R. R. Co., 2 Wall. 283, 17 L. Ed. 725, the stockholders of the corporation were allowed to put in answer, nem. con., to protect their interests where the directors negligently or covenously failed to act. The court simply held that they could not be regarded as answering for the corporation itself. That in such case the court, in its discretion, can permit a stockholder to become a party defendant for the purpose of protecting his own interests against unfounded or illegal claims against the company.

"But this defense is independent of the company and of its directors, and the stockholder becomes a real and substantial party to the extent of his own interests and of those who may join him, and against whom any proceeding, order, or decree of the court in the cause is binding, and may be enforced. It is true, the remedy is an extreme one, and should be admitted by the court with hesitation and caution; but it grows out of the necessity of the case and for the sake of justice, and may be the only remedy to prevent a flagrant wrong."

The court further, to qualify the case, said:

"Although the appearance and answers of the stockholders were irregularly allowed by the court, as each was permitted to appear and answer in the name of the company, yet, as the defense set up is doubtless the same as that which they would have relied on if they had been admitted simply as stockholders, we are inclined to regard the answers the same as if put in by them in that character."

The Supreme Court of Massachusetts maintains the doctrine that the fact that a person is a stockholder, or formerly a director of the company, and may be ultimately liable to pay judgments recovered against the corporation, does not give him the right to assume matters of defense to the action; that he is in no sense a party to the action, and he is only summoned in to afford him an opportunity of trying the incidental question whether any judgment obtained by the plaintiff shall be capable of being enforced against his goods and estate. Robbins v. Justices, etc., 12 Gray (Mass.) 225, 226; Byers v. Franklin Coal Co., 14 Allen (Mass.) 470.

It is also held in Townsend v. First Freewill Baptist Church, 6 Cush (Mass.) 279:

"That if the defendant intend to deny its existence, or its organization as a corporation, it must do so by plea in abatement, or in bar, under the old system of pleading; and since the statute abolishing special pleading, it must give notice of its intention to do so in a specification of defense."

In American Express Company v. Haggard, 37 Ill. 465, 87 Am. Dec. 257, Haggard sued the express company as a corporation; service upon the agent at Bloomington in the manner prescribed by statute. The agent came in and denied that he was the agent of such corporation, that he knew no such corporation, and on his affidavit moved to quash the return. Livingston et al. appeared and filed a plea in abatement, stating that they were engaged in the business of express carriers under the general name of the "American Express Company," asserting that it was never a body politic or corporate. The court said of the affidavit that its object was to raise the question as to whether the

defendants were a corporation; that this was a matter dehors the record; the question should be presented by plea in abatement, and not by motion. Thereupon counsel filed a plea in abatement in the name of Johnston, Livingston, Fargo, Wells, et al., setting up the fact that they were doing business under the name of the "American Express Company," but denying that it was a corporation. Demurrer to the plea was sustained, without otherwise passing on the question here involved.

Furthermore, the affidavit of Johnston in support of his motion does not assert that the defendant was never duly created a municipal corporation, or that it had ever been dissolved. It only represents that it had failed to elect a board of directors for a series of years, and that the attempt to nominate him as mayor was abortive. The statute of Kansas (Gen. St. Kan. 1905, c. 23, art. 5) declares how such corporation may be dissolved:

"First, by the expiration of the time limited in its charter; second, by a judgment of dissolution rendered by a court of competent jurisdiction; but any such corporation shall be deemed to be dissolved for the purpose of enabling any creditors of such corporation to prosecute suits against the stockholders thereof to enforce their individual liability, if it be shown that such corporation has suspended business for more than one year, or that any corporation now so suspended from business shall for three months after the passage of this act fail to resume its usual and ordinary business."

By another provision of the statute it is provided that the term of all elective or appointive officers shall be for specified period, and until their successors are elected and qualified.

Dillon in his work on Corporations (4th Ed. vol. 1, § 166), speaking to this subject, says:

"Here it is the people of the locality who are erected into a corporation, not for private, but for public or quasi public, purposes. The corporation is mainly and primarily if not wholly an instrument of government. The officers do not constitute the corporation, or an integral part of it. The existence of the corporation does not depend upon the existence of officers. The qualified voters or electors have, indeed, the right to select officers; but such officers are the mere agents or servants of the corporation, and hence the doctrine of a dissolution by the loss of an integral part has, in such cases, no place. If all the people of the defined locality should wholly remove from or desert it, the corporation would, from necessity, be suspended or dormant, or perhaps entirely cease; but the mere neglect or mere failure to elect officers will not dissolve the corporation, certainly not while the right or capacity to elect remains. In this respect municipal corporations resemble ordinary private corporations, which exist per se, and consist of the stockholders who compose the company. The officers are their agents or servants, but do not constitute an integral part of their corporation, the failure to elect whom may suspend the functions, but will not dissolve the corporation."

See Welch v. Ste. Genevieve, 1 Dill. 130, Fed. Cas. No. 13,372.

It is matter of public history that some communities under municipal charters, with more enterprise than discretion—optimistic of the future, but little reckoning of the day of redemption—have in the past put upon open market bonds, garish with gilt and tempting with high rates of interest. When the confiding purchaser comes to demand payment he finds a bankrupt town. Under the suggestion of some leader resort is taken to the coup d'etat of either having the governing board resign, or the voters to forget to hold any more elections. So

that when the process server comes with the writ of summons the village school master appears and proclaims, "ilium fuit," suggesting a return of non est inventus. But the law says in such contingency the writ may be served upon the designated officer last in office. Salamanca Township v. Wilson, 109 U. S. 627, 3 Sup. Ct. 344, 27 L. Ed. 1055; Welch v. Ste. Genevieve, 1 Dill. loc. cit. 133, Fed. Cas. No. 17,-372; Muscatine Turnverein v. Funck, 18 Iowa, 469. If in such contingency it be disputed that the person served was not such officer, de jure or de facto, the question may be tested by the undissolved corporation by recognized plea. If it has no representative to thus protect it, it is the author of its own misfortune. The way of the transgressor always has been and always will be hard.

It results that the motion is sustained.