Combes vs. Keyes.

COMBES, Respondent, vs. KEYES, Intervener, Appellant.

*December 15, 1894 — February 5, 1895.*

*Corporations: Surrender of franchise, when presumed: Suggestion of dissolution, who may make: Costs.*

1. A railroad corporation of this state which had, by judicial sales, been divested of all its property, and for twenty-six years thereafter had not owned any property or done any business or elected any officers or kept any office in this state, is *held* to have voluntarily surrendered its corporate franchises and ceased to exist.
2. In an action against such corporation, it was competent for one who had been the secretary thereof to intervene and inform the court of the facts which had worked its dissolution.
3. Upon reversal of an order refusing to set aside an order for service of the summons on such corporation by publication, no costs can be awarded in favor of the defunct corporation.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge.    *Reversed.*

Some years prior to June 1, 1858, the La Crosse & Milwaukee Railroad Company was duly incorporated by the legislature of Wisconsin, and organized to build and operate a railroad from Milwaukee to La Crosse, and was given the

right to mortgage its road by divisions. It divided the road into two divisions,— the eastern, extending from Milwaukee to Portage City, a distance of 95 miles; and the western, extending from Portage City to La Crosse, a distance of 105 miles. The eastern division was incumbered by three mortgages, to secure bondholders on that division; and the western division was incumbered by two mortgages, to secure bondholders on that division. The whole road was incumbered by several judgments, one of which was in favor of Newcombe Cleveland, hereinafter mentioned. On June 1, 1858, that company executed a mortgage to William Barnes, as trustee, to secure an issue of bonds which covered the whole road, and August 11, 1858, executed a mortgage supplemental to said last-named mortgage, by way of further assurance. The Barnes mortgage, though last, was first foreclosed. Sale under it was made May 21, 1859, to said trustee, who became the purchaser for the bondholders, and the bondholders thereupon, and on May 23, 1859, organized a new company under the general statutes of this state, by the name of the Milwaukee & Minnesota Railroad Company, to which Barnes conveyed the property so purchased by him. Said new company was so organized for the purpose of acquiring title to the railroad formerly owned by the said La Crosse & Milwaukee Railroad Company, extending from Milwaukee to Portage City, in the state of Wisconsin, a distance of about 95 miles, and for operating said road and paying off said prior incumbrances.

On October 24, 1864, for the purpose of raising money to pay off prior incumbrances upon the property of said corporation, and for other purposes of the corporation, the said Milwaukee & Minnesota Railroad Company duly executed, under its corporate seal, a trust deed whereby it conveyed all of its property and franchises to James H. Fonda and G. Hilton Scribner, of New York, to secure certain bonds to be issued by said company to the aggregate amount of

Combes vs. Keyes.

$600,000, each bond to be for $1,000, payable July 1, 1884, with interest at the rate of eight per cent. per annum, payable semi-annually. On October 24, 1864, the defendant, the Milwaukee & Minnesota Railroad Company, duly executed its bond, under its corporate seal, bearing date on that day, whereby it acknowledged itself indebted to the bearer thereof in the sum of $1,000, which sum it thereby agreed to pay to the bearer thereof on July 1, 1884, at the office of the company in New York, with interest at the rate of eight per cent. per annum, payable at the same place semi-annually, on the 1st days of January and July in each year. Said bond was duly registered and countersigned by said trustees November 8, 1864. Annexed to said bond were thirty-nine coupons for $40, each of which was payable six months after the date of the preceding one. Annexed to the same bond was one coupon for $26.67, payable January 1, 1865. On October 24, 1864, the Milwaukee & Minnesota Railroad Company duly executed, under its corporate seal, 331 other bonds, bearing date on that day, and duly registered and countersigned by said trustees, of the same amount, form, tenor, and effect as the bond above described, except that each was designated by a different number, and each had forty coupons attached, of the tenor and effect of those annexed to said bond so described. The said 331 bonds were designated by the numbers stated. On December 1, 1864, the said 332 bonds were duly issued by the Milwaukee & Minnesota Railroad Company, and sold and transferred to various third parties, who paid a valuable consideration therefor. Payment of said first series of coupons, when they fell due, was refused.

Upon the organization of the Milwaukee & Minnesota Railroad Company, that company claimed to have succeeded to all the rights, property, and franchises of the La Crosse & Milwaukee Railroad Company, subject to all prior mortgages and judgments. The first mortgage on the western division was subsequently foreclosed, and that division sold.

Combes vs. Keyes.

The purchasers at such sale thereupon organized a new company, by the name of the Milwaukee & St. Paul Railway Company, which company went into possession of that division. Subsequently, and on April 18, 1866, Frederick P. James, as the assignee of the said judgment against the La Crosse Company in favor of Newcombe Cleveland, mentioned, commenced a suit in equity in the circuit court of the United States for the district of Wisconsin, against the Milwaukee & Minnesota Railroad Company, to enforce the lien of said judgment on the said eastern division. Such proceedings were had in that suit that January 11, 1867, a decree was entered adjudging that there was due to said James on the judgment $98,801.51, and ordering a sale of the eastern division, subject to all prior liens, for its payment. Under that decree, the property was, March 2, 1867, sold and conveyed to the Milwaukee & St. Paul Railway Company, for $100,920.94, and from that time the said last-named company, whose name has since been changed to the Chicago, Milwaukee & St. Paul Railway Company, has been in the possession of said road from Milwaukee to Portage City, as owner, under such sale and purchase.

Since the sale of said road under said judgment and decree as aforesaid (more than twenty-six years before the commencement of this action), the said Milwaukee & Minnesota Railroad Company has not conducted any of the ordinary business theretofore conducted by said corporation, or any business. The law governing the election of the directors of said company, to wit, ch. 28, P. & L. Laws of 1862, provided, in effect, that the regular annual meeting of the stockholders of the Milwaukee & Minnesota Railroad Company, for the election of directors of said company, should be held on the last Wednesday of May, at 10 o'clock in the forenoon of that day, in each year, in the city of Milwaukee; that the secretary of said company should give thirty days' notice of the place and time of said election, in

Combes vs. Keyes.

at least two newspapers, one printed in Milwaukee and the other at Madison; that the governor should annually appoint three inspectors for said election, who should take an oath faithfully and impartially to discharge the duties devolved upon them by said act; that the inspectors should meet at the time and place appointed for said election, and proceed to receive such votes for directors of said company as might legally be offered and received under said act; that the board of directors of said company should consist of nine persons authorized to vote at said election, and such nine persons receiving the highest number of votes at said election should be the board until another election should be held and their successors elected. The appellant, *Dwight W. Keyes,* was elected secretary of the Milwaukee & Minnesota Railroad Company at the time of its organization. He continued to act as such secretary so long as said company pretended to transact any business in Wisconsin, and was acting as such in 1865 and 1866. He was never notified of the election of any successor, and never had any knowledge or information that any other person was elected as secretary of said company. There never was after April, 1867, any meeting of the stockholders of said company, in Wisconsin or elsewhere, for the purpose of electing a board of directors, or for any other purpose. After that time there never was a meeting of the board of directors. No inspectors of election have ever been appointed since 1865. No notice of the time and place of the meeting of stockholders of said defendant for the election of directors, or for any purpose, was ever published in any newspaper in Milwaukee or Madison since 1865. No such notice has been published since 1865. Said Milwaukee & Minnesota Railroad Company has not, for more than twenty-six years prior to the commencement of this action, owned, possessed, or had any property within Wisconsin, nor has it been engaged in any business whatever.

Combes vs. Keyes.

On April 12, 1893, the plaintiff caused a complaint to be made out and verified against the said Milwaukee & Minnesota Railroad Company, and, in addition to the issuance of said 332 bonds and the mortgage to secure the same and the nonpayment thereof, in effect alleged that, before the commencement of this action, the said 332 bonds were sold and transferred to this plaintiff for a valuable consideration, and he is now the owner thereof; that no part of the principal or interest thereon has been paid to him, and that there is now due to him from said defendant, the Milwaukee & Minnesota Railroad Company, upon said bonds, the sum of $332,000, together with interest thereon from December 1, 1864, and also interest upon each of said coupons from the date of its maturity. Judgment is demanded against the Milwaukee & Minnesota Railroad Company for such amount. Thereupon a summons was issued in this action, and delivered to the sheriff of Milwaukee county, who returned the same, with the following indorsement, to wit: "State of Wisconsin, Milwaukee County — ss.: I hereby certify that, after due diligence, search, and inquiry, I cannot find the within-named defendant, the Milwaukee and Minnesota Railroad Company, within my county; and from information obtained, and I believe the information to be true, no officer or agent of said company upon whom to make service can be found within the state of Wisconsin. MICHAEL DUNN, Sheriff, per HENRY J. HOLLE, Undersheriff. Dated Milwaukee, May 4, 1893." On May 5, 1893, the summons and complaint were filed with the clerk of the circuit court for Milwaukee county, and, upon affidavits of the plaintiff and his attorney subsequently made and filed therein, the plaintiff obtained from a commissioner of said circuit court an order for the service of said summons upon the said Milwaukee & Minnesota Railroad Company by publication, and the records show that said summons was published accordingly.

Upon affidavits showing the facts outside of said complaint

stated, the said *Dwight W. Keyes* obtained an order, September 28, 1893, ordering plaintiff to show cause why said order of publication and such service of said summons should not be set aside and held for naught. From an order dismissing said order to show cause and denying the relief therein prayed for, the said *Keyes* appeals.

*C. H. Van Alstine,* attorney, and *John W. Cary,* of counsel, for the appellant, argued, among other things, that the appellant had a right to be heard upon the motion to dismiss for want of jurisdiction, although he was not a party to the action. *Calander v. Painesville & H. R. Co.* 11 Ohio St. 516; *Kelley v. Miss. Cent. R. Co.* 2 Flip. 581; *Welch v. St. Genevieve,* 1 Dill. 130; *National Bank v. Colby,* 21 Wall. 609; *Greeley v. Smith,* 3 Story, 657; *State v. Jefferson I. Co.* 60 Tex. 312. There had been at the time of the commencement of this action a suspension, by the alleged corporation, of all business and elections for more than twenty-six years, during all of which time it had no property. This of itself is conclusive evidence of a surrender of the charter and of its acceptance by the state. *People ex rel. Att'y Gen. v. Bank of Pontiac,* 12 Mich. 527; *Brandon Iron Co. v. Gleason,* 24 Vt. 228; *Bartholomew v. Bentley,* 1 Ohio St. 37; *Goulding v. Clark,* 34 N. H. 148; *King v. Morris,* 3 East, 213; *S. C.* 4 id. 17; *Bruce v. Platt,* 80 N. Y. 379; *Bradt v. Benedict,* 17 id. 93; *Slee v. Bloom,* 19 Johns. 456; *S. C.* 20 id. 669; *Penniman v. Briggs,* Hop. 300; *Bank of Poughkeepsie v. Ibbotson,* 24 Wend. 473; *Denike v. N. Y. & R. L. & C. Co.* 80 N. Y. 606; Cook, Stock (2d ed.), § 629, note 4. Under sec. 33, ch. 79, R. S. 1858, the franchises of a Wisconsin corporation could be sold under foreclosure or execution; and on such sale and the operation of the road by the purchasers and the cessation of all business and acts by the old corporation, a surrender of the "franchise of being a corporation," and an acceptance thereof by the state, occurs. *Memphis & L. R. R. Co. v. R. R. Comm'rs,* 112 U. S. 609, 614,

619; *State ex rel Att'y Gen. v. Sherman*, 22 Ohio St. 411; *Snell v. Chicago*, 133 Ill. 413, 430. The Milwaukee & Minnesota Railroad Company having been dissolved as early as 1868, and more than three years having elapsed since the dissolution, it cannot be sued, and if judgment should be entered against it in this action such judgment would be void. *Von Glahn v. De Rosset*, 81 N. C. 467, 469; *Merrill v. Suffolk Bank*, 31 Me. 57. If the respondent has an existing *bona fide* debt against the deceased corporation, and the stockholders have not paid in full for their stock, or if there is property in the possession or under the control of any person or corporation which, for any reason, ought to be applied to the payment of the debts of the deceased corporation, a court of equity would have jurisdiction to give relief in some appropriate manner. *Folger v. Columbian Ins. Co.* 99 Mass. 276.

*Hugh Ryan*, for the respondent, contended, *inter alia*, that the cases cited by appellant fail to sustain his contention that the Milwaukee & Minnesota Railroad Company is dissolved. The New York cases are of two classes: *First*, cases where the courts have held that a corporation, *within the facts of the particular case*, was so far dissolved that a creditor could pursue his remedy against a stockholder as to debts owing by the corporation at the time of its dissolution, without obtaining or awaiting a formal dissolution. *Second*, where it was attempted to enforce against trustees of a corporation a harsh remedy given by a penal statute, on the ground that the corporation had failed, after it had become insolvent and ceased to do any business, to make and publish a report of its condition, as required by statute; and the courts held that the insolvency and abandonment of business so far dissolved the corporation as to render it useless and unnecessary for it to make any report. And in *Mickles v. Rochester C. Bank*, 11 Paige, 118, the courts of the same state have decided in express terms that

Combes vs. Keyes.

until a corporation has been judicially declared dissolved any creditor may proceed by suit against it to collect his debt. The clear meaning and intent of sec. 33, ch. 79, R. S. 1858, are to empower a railroad company to mortgage, and the purchaser at the foreclosure sale to acquire, the franchise of the company to maintain and operate a road, and not the franchise to be a corporation. The franchise to be a corporation is not a subject of sale and transfer, unless the law, by some positive provision, has made it so and pointed out the modes in which such sale and transfer may be effected. After an act of disposition which separates the franchise to maintain a road and make profit from its use, from the franchise of being a corporation, though a judgment of dissolution may be authorized, yet, until there be such judgment, the rights of the corporators and of third persons may require that the corporation be considered as still existing. *Memphis & L. R. R. Co. v. R. R. Comm'rs,* 112 U. S. 609; *Coe v. C., P. & I. R. Co.* 10 Ohio St. 372; *Snell v. Chicago,* 133 Ill. 413, 428. If, however, the railroad company was empowered by the statute to mortgage its franchise to be a corporation, and such franchise would pass to the purchaser, that law has no application to this case, because the franchises of the Milwaukee & Minnesota Railroad Company were never mortgaged and never sold. A corporation does not become dissolved by misuser or nonuser of its franchises; by the loss of all its property; by insolvency; by a voluntary assignment of all its assets; by the appointment of a receiver; by failure to elect directors or officers; or, so far as affects the rights of creditors to bring suit against it, by any means short of a surrender of its franchise to the state and an acceptance by the state of such surrender, or by the judgment of a court of competent jurisdiction declaring such dissolution. *Boston Glass Mfg. Co. v. Langdon,* 24 Pick. 49; *Coburn v. Boston P. M. Mfg. Co.* 10 Gray, 243; *Foster v. Essex Bank,* 16 Mass. 245; *Chamberlin v.*

*Huguenot Mfg. Co.* 118 id. 532; *State Nat. Bank v. Ribi-
doux,* 57 Mo. 446; *Kansas City Hotel Co. v. Sauer,* 65 id. 279;
*Valley B. & S. Inst. v. Ladies' Cong. S. Soc.* 28 Kan. 423;
*Cochran v. Arnold,* 58 Pa. St. 399; *Hamilton v. Clarion, etc.
R. Co.* 144 id. 34; *Atlanta v. Gate City G. L. Co.* 71 Ga. 106;
*Barren Creek D. Co. v. Beck,* 99 Ind. 247; *Russell v. Mc-
Lellan,* 14 Pick. 63; *Oakes v. Hill,* id. 442; *Rollins v. Clay,*
33 Me. 132; *Penobscot Boom Corp. v. Lamson,* 16 id. 224;
*Hodsdon v. Copeland,* id. 314; *Prop'rs of B. M. House v.
Webb,* 66 id. 398; *Reichwald v. Comm. Hotel Co.* 106 Ill. 439;
*Town v. Bank of River Raisin,* 2 Doug. 530; *Buell v. Buck-
ingham & Co.* 16 Iowa, 284. A claim of forfeiture of a
franchise, or dissolution of a corporation by misuser or non-
user of its franchises, cannot be raised collaterally. The
default must be judicially determined in a suit brought for
that purpose. *Toledo & A. A. R. Co. v. Johnson,* 49 Mich.
148; *Brooklyn S. T. Co. v. Brooklyn,* 78 N. Y. 524; *Day v.
O. & L. C. R. Co.* 107 id. 129; *Mickles v. Rochester C. Bank,*
11 Paige, 118; *Kincaid v. Dwinelle,* 59 id. 548; *Moseby v.
Burrow,* 52 Tex. 396; *Jeffersonville R. Co. v. Applegate,* 10
Ind. 49; *Bohannon v. Binns,* 31 Miss. 355; *Revere v. Boston
Copper Co.* 15 Pick. 351; *Allen v. N. J. S. R. Co.* 49 How.
Pr. 14; *Everts v. Killingworth Mfg. Co.* 20 Conn. 447; *En-
field T. B. Co. v. Conn. River Co.* 7 id. 28; *King v. Amery,*
2 Term, 515; *Slee v. Bloom,* 5 Johns. Ch. 366; *Terrett v.
Taylor,* 9 Cranch, 51; *Comm. v. Union F. & M. Ins. Co.* 5
Mass. 230; *Sleeper v. Goodwin,* 67 Wis. 577; 2 Kent, Comm.
*312; *Brandon Iron Co. v. Gleason,* 24 Vt. 228; *Wilde v.
Jenkins,* 4 Paige, 481.

CASSODAY, J.    The Milwaukee & Minnesota Railroad Com-
pany was organized, under the general statutes, May 23,
1859. It thereupon acquired by conveyance from Barnes,
through a foreclosure of the Barnes mortgage and a sale
thereon to Barnes, all the rights, property, and franchises

of the La Crosse & Milwaukee Railroad Company, subject, however, to three mortgages on the eastern division and two mortgages on the western division and several judgments on the respective divisions, including one in favor of Newcombe Cleveland. Prior to April 18, 1866, the Milwaukee & St. Paul Railroad Company acquired the title and possession of the western division, through the foreclosure of the first mortgage thereon and a sale thereunder. The La Crosse & Milwaukee Railroad Company was expressly authorized by its charter, and the amendments thereto, to mortgage all of its estate, real, personal, or mixed, "together with the functions appertaining to said railroad, and all corporate and other franchises, rights, and privileges" of said company; and hence, by that foreclosure and sale, the same were vested in the Milwaukee & St. Paul Railroad Company. March 2, 1867, the Milwaukee & St. Paul Railroad Company acquired the title and possession of the eastern division, under and by virtue of a marshal's sale and conveyance to it on a decree entered in the federal court, January 11, 1867, as mentioned, in a suit in equity in favor of the assignee of the Cleveland judgment, and against the Milwaukee & Minnesota Railroad Company, to enforce that judgment as a lien thereon. Since March 2, 1867, the name of the Milwaukee & St. Paul Railroad Company has been changed to the Chicago, Milwaukee & St. Paul Railway Company, and the same has ever since been in possession and operated said railroad as owner thereof.

Prior to the marshal's sale and conveyance mentioned, the Milwaukee & Minnesota Railroad Company had a board of directors, who had severally been elected at the time and place and in the manner prescribed by the statutes of this state, and such board had elected a president, secretary, and treasurer of that company, who had respectively acted as such officers down to the time of the marshal's sale and conveyance mentioned. Independently of statute, it was

the duty of that company, during its existence, to have an office and officers within this state. *State ex rel. Att'y Gen. v. M., L. S. & W. R. Co.* 45 Wis. 579. It appears that no notice of the election of any such directors for that company was ever given and no appointment of any inspectors of any such election was ever made as prescribed by statutes after 1866, and that after April, 1867, there never was any meeting in Wisconsin of the stockholders or directors of said company for any purpose; that since that time said company has neither owned, possessed, nor had any property in this state, nor been engaged in any business therein, and at the time of the commencement of this action it had no agent or officer therein.

The question recurs whether the Milwaukee & Minnesota Railroad Company has any legal existence in this state, so as to entitle it to sue and be sued. That company was incorporated and organized under and by virtue of the laws of this state over thirty-five years ago, and existed only by force of the laws of this state. Since such laws, of themselves, had no extra-territorial force, that corporation could not migrate to some other state or country, but during its existence was bound to dwell in this, the state of its creation. *Seamans v. Knapp - Stout & Co. Company, ante,* p. 171; *Larson v. Aultman & Taylor Co.* 86 Wis. 283–284; *Bank of Augusta v. Earle,* 13 Pet. 588; *Shaw v. Quincy Mining Co.* 145 U. S. 449. While it could only live and have its being in this state, yet its residence here created no insuperable objection to its power to contract and be contracted with in other states, and having its legal existence recognized in such other states. *Ibid.* But any exercise of its corporate franchises in such other states was merely permissible by virtue of the comity of such states. *Ibid.; Liverpool Ins. Co. v. Massachusetts,* 10 Wall. 566.

Such being the law, it is very manifest that, if the Milwaukee & Minnesota Railroad Company had any legal ex-

istence at the time of the commencement of this action, such existence was confined within the limits of this state.   And yet the sheriff's return is to the effect "that, after due diligence, search, and inquiry," he could not find that company within his county, nor any officer or agent of the same within the state.   The same condition of things, as to that company in this state, had existed ever since April, 1867. If, during those twenty-six years, it existed in this state at all, such existence was without any definite location, intangible, and unascertainable.   The case is not one of a defendant whose "residence is unknown," or who "keeps himself concealed" within the state, with the intent to "avoid the service of a summons," within the meaning of the statute.   R. S. sec. 2639.   The service of the summons by publication in this case is sought to be justified upon the sole ground that the defendant is a "private corporation organized under the laws of the state, and the proper officers on whom to make service . . . cannot be found." *Ibid.*

The statute declares, in effect, that whenever any corporation shall have neglected or refused to pay and discharge its debts, "or shall have suspended its ordinary and lawful business for *one whole year*, it shall be deemed to have surrendered the rights, privileges, and franchises granted or acquired under any law, *and shall be adjudged to be dissolved.*"  Sec. 1763.   But this court has repeatedly held that such neglect, refusal, or suspension "for one whole year" does not *ipso facto* operate as a dissolution of such corporation, but simply declares an efficient cause for adjudging a, dissolution in a proper action.   *Strong v. McCagg*, 55 Wis. 624; *Sleeper v. Goodwin*, 67 Wis. 577.   The statute also prescribes, in effect, that where the existence of a corporation expires by its own limitation, or is *voluntarily* dissolved in the manner provided by law or by its articles of association, or is annulled by forfeiture or otherwise, nevertheless it

shall continue to exist for three years for certain purposes. Sec. 1764. *Sleeper v. Goodwin*, 67 Wis. 584. So the statute authorizes the dissolution of a corporation by a written resolution in certain cases. Sec. 1789.

It must be remembered that the Milwaukee & Minnesota Railroad Company acquired the rights, property, and franchises of the La Crosse & Milwaukee Railroad Company by virtue of the foreclosure and sale of the Barnes mortgage; that it took such rights, property, and franchises subject to the prior mortgages and prior judgments mentioned; that the purpose of its incorporation and organization was to operate the railroad thus acquired between the points mentioned; that prior to April, 1867, it had been completely ousted and dispossessed of the entire railroad, and every part thereof, under and by virtue of the foreclosure and sale and the decree in equity and sale mentioned; that all such rights, property, and franchises thereby and thereupon became vested in the St. Paul Company, which for more than twenty-six years prior to the commencement of this action, and since, has had the possession and control of the entire line of railroad and every part thereof, and during all that time operated the same as a railroad, with the repeated express or implied sanctions of the legislature of this state; that during the same time the Milwaukee & Minnesota Railroad Company has not owned nor possessed any railroad, nor does it appear that it has attempted to construct any. The contention of counsel for the plaintiff seems to be to the effect that while the Milwaukee & Minnesota Railroad Company had, by virtue of the sales and conveyances mentioned, been deprived of the entire railroad and its property and its franchises, as a corporation, to maintain and operate the same, yet that it still possesses a franchise *to be a corporation,* and hence may still sue and be sued. Conceding that a franchise to be a corporation may, under certain circumstances and for certain purposes and for a limited time, exist

without any franchise to maintain and operate such corporation, still the question here presented is whether any such franchise to be a corporation survived to the Milwaukee & Minnesota Railroad Company after the transfers made under the circumstances mentioned, and for the length of time named.

Undoubtedly, a private corporation may dissolve itself and terminate its corporate existence by a voluntary surrender of its franchises to the state. To make the surrender complete, however, it must be accepted by the state. 4 Am. & Eng. Ency. of Law, 296, and cases there cited. It would seem that after such corporation had been stripped of all its property, and for twenty-six years had failed to exercise any corporate franchise or elect any officer in this state or keep any office therein, such surrender would be presumed. *Brandon Iron Co. v. Gleason*, 24 Vt. 228. And so it would seem that, where a corporation suffers acts to be done which destroy the end and object for which it was instituted, it is equivalent to a surrender of its rights. *Slee v. Bloom*, 19 Johns. 456, 10 Am. Dec. 273; *Briggs v. Penniman*, 8 Cow. 387, 18 Am. Dec. 454. It has been held that a seizure and sale of the franchises of a corporation effect its dissolution. *State Bank v. State*, 1 Blackf. 267, 12 Am. Dec. 234. So it has frequently been held that the consolidation of two or more railway companies, in pursuance of a statute, operates as a dissolution of the old corporations and the merger of the franchises and privileges of each of them into the new corporation. *Shields v. Ohio*, 95 U. S. 319; *Green Co. v. Conness*, 109 U. S. 104; *Pullman's Palace Car Co. v. Mo. Pac. R. Co.* 115 U. S. 587; *Keokuk & W. R. Co. v. Missouri*, 152 U. S. 301. It is certainly within the power of a legislature which creates a corporation and grants franchises to it, to authorize it to sell or mortgage those franchises. *Willamette Mfg. Co. v. Bank of British Columbia*, 119 U. S.

191.   Here the franchises were mortgaged by express legis-
lative authority, and hence were transferred through the
foreclosure and sale pursuant to law.

Besides, the statute in this state declares, in effect, that
any person or association of persons which shall have or
may hereafter become the owner or assignee of the rights,
powers, privileges, and franchises of any corporation created
or organized by or under any law of this state, by purchase
under a mortgage sale, sale in bankrupt proceedings, or sale
under any judgment, order, decree, or proceedings in any
court in this state, including the courts of the United States
sitting herein, "*may, at any time within two years after such
purchase or assignment*," organize anew, as provided by the
statutes, and shall thereupon have the same rights, priv-
ileges, and franchises which such corporation had, or was·
entitled to have, at the time of such purchase and sale, and
such as are provided by the statutes applicable thereto.
R. S. sec. 1788. That section is in effect the same as ch. 115,
Laws of 1872. The Milwaukee & St. Paul Railroad Company
became such purchaser, and so organized anew, within two
years after such purchase and assignment, although about
five years prior to that enactment. The manifest intention
of the act was to ratify and confirm all such prior transfers,
and to accept all such prior surrenders of corporate rights.
The two years mentioned was merely to limit the time
within which any purchasers or assignees, subsequently to
the enactment, might so organize anew.

After careful consideration, we are constrained to hold,
upon the showings made, that, prior to the commencement
of this action, the Milwaukee & Minnesota Railroad Com-
pany had voluntarily surrendered all of its corporate fran--
chises, and that the same had been accepted by the state.

After the dissolution of a corporation, the power to pro-
ceed judicially against it in an action is wholly divested,.

except as specially authorized by statute. "A defunct corporation, like a natural person who dies, cannot be brought into court by process served upon persons who were officers or agents when the corporation was in existence." Waterman, Corp. § 434. "Where, during the pendency of a suit, a corporation surrenders its charter, which is accepted by the legislature, it becomes defunct, and the suit abates, unless the legislature, by some act, saves the right of action against the corporation." *Greeley v. Smith*, 3 Story, 657. In *Mumma v. Potomac Co.* 8 Pet. 281, it was held that "there is no pretense to say that a *scire facias* can be maintained and a judgment had thereon against a dead corporation, any more than against a dead man." In that case the attorneys of record for the corporation at the time of the rendition of the original judgment appeared and suggested the death of the corporation after the rendition of such judgment, and alleged the same by way of a plea in abatement. The facts being admitted, the trial court gave judgment that the plaintiff take nothing by his writ of *scire facias*, and that judgment was affirmed by the supreme court of the United States.

From the very nature of things, the dissolution or death of a corporation defendant, like the death of a party to a pending action, can only be brought to the attention of the court by some one other than the defunct corporation. This is obvious from the authorities cited. See, also, *Welch v. Ste. Genevieve*, 1 Dill. 130; *Nat. Bank v. Colby*, 21 Wall. 609, 611, 614; *State v. Jefferson Iron Co.* 60 Tex. 312. We think it was competent for *Dwight W. Keyes*, who had been the secretary of the defunct corporation, to intervene and inform the court of the facts which had worked a dissolution and death of the corporation.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded with direction to set aside the order of publication and the service of the summons; but,

Chicago, Milwaukee & St. Paul R. Co. vs. Hoyt and others.

as indicated in *Mumma v. Potomac Co.* 8 Pet. 281, as there is no such corporation *in esse* as the Milwaukee & Minnesota Railroad Company, there can be no costs awarded in its favor.