CASE 23—INDICTMENT—OCTOBER 12.

# Conley v. Commonwealth.

APPEAL FROM CARLISLE CIRCUIT COURT.

1. DISTURBING RAILROAD SWITCH—TITLE OF ACT OF LEGISLATURE.—Section 807 of the Kentucky Statutes which provides for the punishment of the offense of disturbing a railroad switch or obstructing a railroad track, being a part of chapter 32 entitled "Corporations—Private," and of article 5 thereof entitled "Railroads," relates to the subject expressed in the title, and is therefore not within the inhibition of section 51 of the Constitution.

2. REPEAL OF STATUTE.—That section of the Kentucky Statutes was not repealed by the act of April 10, 1893, which now constitutes chapter 36 of the Kentucky Statutes entitled "Crimes and Punishments." While that chapter is a complete system of statutory law as to offenses with which it deals, it can not be regarded as repealing provisions of the corporation law enacted only five days before, creating offenses as to which it does not pretend to legislate.

3. DRUNKENNESS DOES NOT FURNISH A COMPLETE EXEMPTION FROM RESPONSIBILITY FOR CRIME, and as the evidence in this case shows conclusively that defendant committed the offense with which he is charged, the court properly refused a peremptory instruction to find for him, even if it be conceded that the evidence showed he was too drunk to know right from wrong.

4. EVIDENCE—PREJUDICIAL ERROR.—As two witnesses testified that they saw defendant unlock the switch and throw it open, and that upon their coming up and telling him to do so he closed it, and this

proof was uncontroverted, defendant was not prejudiced by the action of the court in permitting these witnesses to testify that when they returned in a short time they found this switch again open and the lights out, and the other end of the switch half a mile away in the same condition.

5. SAME.—Defendant was not prejudiced by the refusal of the court to admit testimony to show that he knew his brother was on a train that would pass in a few hours. In view of the positive proof that he did what he is charged with doing, the only purpose of such testimony must have been to show that he was so drunk he did not know right from wrong, and as this, if true, did not relieve him from all responsibility, and he was given the lightest penalty fixed by the law, the rejection of the testimony could not have been prejudicial.

SAMUEL H. CROSSLAND FOR APPELLANT.

1. The staute under which the indictment was found is in violation of section 51 of the constitution, because the subject is not expressed in the title. (O'Donaghue v. Aiken, 2 Duv., 479; Milflange v. McCullom, 83 Ky., 365.)

2. The statute also violates section 59 of the constitution, which forbids special acts "to regulate the punishment of crimes and misdemeanors."

3. The chapter upon crimes and punishments which went into effect April 10, 1893, had the effect to repeal the statute under which the indictment was found. which forms a part of the chapter on corporations, enacted April 5, 1893. (Buckhannon v. Common wealth, 15 Ky. Law Rep., 738.)

4. The court erred in admitting incompetent testimony and rejecting competent testimony.

WM. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLEE.

1. The indictment follows the language of the statute and is unobjectionable.

2. The court did not commit any error in admitting or excluding testimony, and the instructions given are unobjectionable.

JUDGE EASTIN DELIVERED THE OPINION OF THE COURT.

The appellant, Will Conley, was indicted by the grand jury of Carlisle county for willfully and maliciously disturbing, displacing and removing a rail and switch, the same

Conley v. Commonwealth.

being a fixture attached to the track of the Chicago, St. Louis & New Orleans railroad, which was at that time leased and operated by the Illinois Central Railroad Company, and whereby an engine and cars might have been upset and thrown from the track.

On the trial of the case in the circuit court the Commonwealth introduced two witnesses who testified that, between the hours of 9 and 10 o'clock, on the night of July 5, 1894, the night on which the offense is charged to have been committed, they were sitting near the switch which it is alleged was tampered with, and that they saw appellant come from the direction of his home, which is about one hundred and fifty feet distant, and go up to this switch, turn down the switch lights, which were set, unlock the switch and throw it open; that they went to appellant and told him to put it back and he did so; that he then started in the direction of his home, while they went together to the house of the depot agent, some four hundred yards away, and informed him of what had occurred; that they, together with the agent, then returned to the switch and found it again open and the light out, and that they then went together to the north end of the switch, which was nearly half a mile away, and found that switch thrown also and locked to the side track and the lights out.

Two of the witnesses for the Commonwealth state that appellant was drunk on the evening in question.

Appellant testified in his own behalf that he was very drunk; that if he was at the switch that night he did not then remember it, and had no recollection of having thrown it or of having had anything to do with it. Other witnesses prove that appellant was very drunk. Appellant also offered to prove by his father that he had a brother in the employ of the railroad company as a brakeman on one of

its trains which was due to pass this point, at which the switch was thrown, between the hour at which the discovery was made and 1 o'clock the next morning, but the court refused to allow the testimony to go to the jury.

A demurrer to the indictment was filed by appellant and overruled by the court, to which he excepted. The case was heard under instructions from the court, and the jury found appellant guilty as charged in the indictment, and fixed his punishment at one year in the penitentiary. A motion for a new trial was made and various grounds in support thereof were filed, but the motion was overruled and this appeal was prosecuted.

Of the many alleged errors relied on for a reversal it is only necessary that we should notice those which will now be briefly considered.

The objection to the action of the circuit court in overruling the demurrer to the indictment is not well taken. No special defect in the indictment is pointed out, nor have we been able to detect any defect therein, and it seems to us to follow the language of the statute. But it is insisted that the statute creating the offense charged, and under which this indictment was framed, was unconstitutional and in conflict with that provision of the constitution of Kentucky which declares that "no law enacted by the General Assembly shall relate to more than one subject and that shall be expressed in the title."    (Sec. 51.)

The statute on which this prosecution is based is section 807, sub-division 2, article 5, chapter 32 of the Kentucky Statutes.    The general title of the chapter is "Corporations —Private."    The title of article 5 of the chapter is "Railroads," and of sub-division 2 of the article is "General Provisions Concerning."    In this chapter the legislature seems to have intended to bring together the statutory law pertain-

ing to private corporations, and in the several articles into which the chapter is divided has treated first of the general provisions applicable to all private corporations, and then of banks, trust companies, insurance companies, railroads, bridge companies, building and loan associations, and then of religious, charitable and educational institutions.

Article 5 of the chapter is devoted exclusively to the subject of railroads, and fixes their rights, duties and liabilities under the title, as above said, of "Railroads."

The question is, does section 807 of the Statutes which declares the offense with which appellant is charged to be a felony, and which prescribes the penalty thereof, come within the inhibition of the constitution above referred to? We do not think it does.

In considering the question we must look to the purpose of the framers of our fundamental law in incorporating this provision into the constitution, and to the spirit of this provision. Many years ago it was determined and judicially declared by this court that the purpose of this provision of the constitution was to remedy the evils of a practice which had become prevalent of uniting in the same legislative act subjects which had no relation to each other, and of permitting amendments to a bill by which matters wholly distinct from it, and wholly unconnected with the subjects of which it treated, were introduced into it, and thereby an improper influence was brought to bear in its final passage; and with this view of the purpose of the constitutional provision under consideration this court said: "Such a construction should, therefore, be given to it as is necessary to render it effectual in accomplishing the object for which it was designed. But it should not be so construed as to restrict legislation to such an extent as to render different acts necessary where the whole subject matter is connected, and may

be properly embraced in the same act." (Phillips v. Coving-ton & Cincinnati Bridge Co., 2 Met., 220.)

Looking at this act, which makes it a penal offense to dis-turb or displace a rail or switch constituting a part of a rail-road track, in the light of the decision quoted from, it is clear to us that the constitutional provision referred to is not violated by incorporating the act into a chapter of the statutes entitled "Corporations—Private," and in an article of that chapter entitled "Railroads." It introduces into the chapter nothing foreign to or disconnected from the sub-ject expressed in the title.

The offense denounced is one that can be committed only against the property of railroad companies which are private corporations. It is for interfering with a species of prop-erty that belongs only to these corporations. This chapter regulates and prescribes all the rights and duties of railroad companies. It imposes many obligations on the corpora-tions, and fixes the penalties for their violation. There is nothing, therefore, in this provision for the protection of their property that can be said to be foreign to the subject of the act, nor can the imposition of a penalty upon those who undertake to destroy their property or to hinder them in the safe enjoyment of it and in the proper discharge of their duties to the public, be said to introduce into the act any subject different from or disconnected from that ex-pressed in the title.

It is well known that very many of the offenses denounced by our State statutes are offenses against special classes of property, or that may be committed only in special lines of business. In this same article on "Railroads," for in-stance, it is made a penal offense to shoot into or throw any missile into a car, or to interfere with the transportation of freight or passengers, or to indulge in boisterous or riotous

conduct on any train, or to attempt to obtain money from any passenger by any game set up on any train, besides other provisions for the protection of these corporations in the operation of their roads, to which we need not refer.

The special section under consideration seems to us a just and prudent provision for the protection of the property of this particular class of citizens, whose rights and duties alone are being legislated upon in this act, and there can be no reasonable objection, either constitutional or otherwise, that the same act which fixes their responsibilities should also extend to them some legal safeguards. This section of the act is directly connected with the subject as expressed in the title, and it is not unconstitutional.

But it is insisted that this section of the act, which became a law on the fifth day of April, 1893, was repealed by the act of April 10, 1893, which now constitutes chapter 36 of the Kentucky Statutes, entitled "Crimes and Punishments," and the case of Buchannon v. Commonwealth, 95 Ky., 334, is relied on as authority to support this contention.

We do not think the case cited, when properly read, warrants the conclusion drawn from it by counsel for appellant, and certainly that case did not demand any such construction of the statutes as is contended for. There the question was whether or not the act of April 10, 1893, repealed section 4 of the act of April 11, 1873, when it undertook to legislate on the whole subject embraced by the act of 1873, and actually adopted sections 2 and 3 of the latter act. The court there said: "And as section 96, embracing only provisions of sections 2 and 3 of the act of 1873, is all on the subject the legislature deemed necessary to engraft in the act of 1893, the conclusion is entirely reasonable that it was not intended that section 4 or any other part of the act of 1873 should be longer in force." From this language it is evi-

dent that, although the court spoke of the act of April 10, 1893, as a complete system of statutory laws on the subject of "Crimes and Punishments," yet all that was meant to be decided in that case was that it is such complete system on subjects with which it deals and as to offenses of which it treats. It had adopted sections 2 and 3 of the act of 1873, and had expressly and purposely left out the other section, thereby showing an intention to repeal that much of the law on the subject. It legislated upon the subject embraced by the act of 1873, and it was reasonable to assume that it legislated fully on that subject. But where, as in the case before us, this act of April 10, 1893, is wholly silent and, where it does not pretend to legislate as to an offense created by an act passed five days before, we can not believe that the legislature intended thereby to repeal the many provisions of this act of April 5, 1893, providing penalties for a great variety of offenses against the property and property rights of private corporations.

As to the instructions given by the court below, they seem to us unobjectionable. They follow the language of the indictment and present correctly the law of the case.

The peremptory instruction asked for by appellant's counsel, as also his instruction "A," were both properly refused. These instructions are both evidently based upon the assumption that appellant's drunkenness at the time of the commission of this offense furnishes a legal defense and exempts him from legal responsibility. The commission of the offense is established beyond question, and by the testimony of witnesses who saw him commit the act and whose statements are uncontroverted. That he was drunk at the time is made equally certain, perhaps, by the testimony, and, as that is practically all the testimony offered by appellant in his defense, the peremptory instruction was clear-

ly asked for upon the idea that his drunkenness furnished a complete exemption from responsibility. His instruction "A" is also based squarely and flatly upon this same assumption, and the court was asked, by that instruction, to so declare the law to the jury.

That the circuit court properly refused to give either of these instructions admits of no question. That drunkenness does not furnish a defense for crime, or exempt the offender from all responsibility for its consequences, is too well settled in this State to require any discussion here. How far evidence of drunkenness may be admissible, or what weight is to be given to it in mitigation of the offense, or as establishing the grade or degree of the crime, it is not necessary here to consider, for the court did, in this case, admit the evidence, and no doubt appellant received the full benefit of it in getting the lightest penalty fixed by the law for this dastardly crime, of which he was clearly proven guilty.

But, in refusing to recognize it as a defense and a protection against the consequences of his crime, as the court below was asked by these instructions to do, it has simply followed and upheld one of the wisest and most salutary principles in the settled law of this State. No man may voluntarily dethrone his intellect and break down the restraints of reason and of conscience, and thereby relieve himself of responsibility to society and to the State.

In our view of the law of this case, therefore, it matters little whether appellant was so drunk as to not know what he was doing or not, though it might, in our opinion, be fairly assumed that a man who was able to carry out a diabolical plan of this kind for throwing a train from the track, who was able to unlock the switch and throw it, who knew that the signal lights must be put out, too, in order to insure success in his plan, and did put down the lights, and who,

when told by those who saw him remove them, to put back the switch in its place and put up the light again, was able to do it, and did it unaided, was certainly possessed of some of his faculties and did have some idea of what he was doing. But what we have said above renders it unnecessary to consider the case in this aspect.

As to the objection that the court erred in admitting testimony as to the condition of the switch when the witnesses returned after going for the depot agent, and as to the condition of the other switch, it seems to us that, in view of the positive proof, which is uncontroverted and practically admitted, as to the guilt of appellant in throwing the switch and putting out the light immediately before this at the south switch, appellant was not prejudiced by this testimony.

Nor was the refusal of the court below to admit testimony to show that appellant knew that his brother was on a train which would pass in a few hours such error as can avail appellant here. The only purpose of such testimony, in view of the positive proof that appellant did what he is charged with having done, must have been to show that he was not conscious of or did not appreciate the probable consequences of his acts, and was so drunk that he did not know right from wrong. But this brings us back again to the legal question involved, and, as we have already determined that appellant's drunkenness, no matter how great, did not relieve him of responsibility, we can not see how the evidence referred to could have been given any legal effect in the case. Besides, it was not attempted to make this proof by appellant, himself, although he testified in the case, but by another witness, and the question might arise as to how that witness could testify as to what appellant knew about his brother being on the train that was soon to pass this point.

We find no error in the record to the prejudice of appellant's substantial rights, and the judgment of the circuit court is affirmed.