BOARD OF COUNCILMEN OF CITY OF FRANKFORT et al. v. DEPOSIT BANK OF FRANKFORT.

(Circuit Court, E. D. Kentucky. March 10. 1902.)

1. BILL OF REVIEW—EFFECT OF DISSOLUTION OF CORPORATION.

A bill of review, the object of which is to set aside a decree in favor of a corporation, cannot be maintained after the corporation has been dissolved, and has ceased to exist absolutely; and the objection to the filing of such bill may be raised by a former officer or attorney of the corporation, upon whom notice of the application has been served.

2. CORPORATIONS—RIGHT TO SUE AFTER DISSOLUTION—KENTUCKY STATUTE.

Act Ky. Feb. 14, 1856, § 2, which provided that on the dissolution of a corporation it might sue and be sued as before for the purpose of settlement of its affairs and distribution of its property, re-enacted in Gen. St. Ky. 1873, c. 68, § 9, was repealed by implication by Acts Ky. 1891–93, c. 203, which substantially re-enacted Gen. St. c. 68, but omitted section 9 thereof.

3. SAME.

Ky. St. § 561, providing for the bringing of suits by or against a corporation which "expires by the terms of the articles of corporation or by the voluntary act of the stockholders," has no application to a corporation whose existence is terminated by the repeal of its charter by the legislature.

4. SAME.

Ky. St. § 1987, relating to the chartering of corporations by the legislature, and which provides that, "whilst privileges and franchises so granted may be changed or repealed, no amendment shall impair other rights previously vested," refers to rights of the corporation and persons interested therein, and not to rights of persons having claims against it.

5. BILL OF REVIEW—APPLICATION FOR LEAVE TO FILE—EFFECT OF PERMISSION GIVEN BY APPELLATE COURT.

Where an application to the supreme court of the United States for permission to apply to a circuit court for leave to file a bill of review for the reconsideration of a decree of that court which the supreme court had affirmed was granted formally without passing on objections made to the granting of such permission going to the right of the applicant to file a bill of review, the circuit court is not precluded from considering such objections on their merits when they are renewed before it on the application for leave to file such bill.

T. H. Crockett, Ira & W. H. Julian, John W. Rodman, and R. J. Breckinridge, for petitioners.

Frank Chinn and D. W. Lindsey, for respondent.

COCHRAN, District Judge. This cause is pending on a motion by complainants for leave to file a bill of review, and on a motion by J. Buford Hendrick and Frank Chinn to quash the return on the notice served upon them of the motion to file the bill of review. By a decree of this court, rendered June 25, 1898 (88 Fed. 383), affirmed by the supreme court of the United States May 15, 1899 (19 Sup. Ct. 880), in a suit brought by Deposit Bank of Frankfort, defendant herein, against state board of valuation and assessment and board of

councilmen of the city of Frankfort, complainants herein, and Franklin county, said state board of valuation and assessment was perpetually enjoined and restrained from proceeding to value the franchise of said Deposit Bank of Kentucky under the act of November 11, 1892, for the years 1895, 1896, 1897, 1898, or any other subsequent years, until the expiration of the charter of the said bank, and from certifying such value to the county clerk of Franklin county, or to any officer of said board of councilmen of the city of Frankfort or the county of Franklin; and the county of Franklin and said board of councilmen of the city of Frankfort were enjoined and restrained from endeavoring to collect any tax upon any such valuation. This decree was based upon a judgment of the Franklin circuit court rendered February 1, 1896, enjoining and restraining the making of such valuation, the certifying of same, and the collecting of taxes thereon for the years 1893 and 1894, in a suit between the same parties, as res adjudicata. The ground upon which this decree is sought to be reviewed is that since its rendition and affirmance by the supreme court of the United States, to wit, on June 19, 1900, said judgment of the Franklin circuit court upon which it was based has been reversed by the court of appeals of Kentucky. 57 S. W. 787, 60 S. W. 19. On February 3, 1902, permission was granted by the supreme court of the United States, which had affirmed the decree sought to be reviewed, to apply to this court for leave to file the bill of review. The notice of the motion for such leave has been served upon J. Buford Hendrick, who was the president of the defendant herein, Deposit Bank of Kentucky, and upon Frank Chinn, who was its attorney in the suit in which said decree was rendered, during the pendency thereof. The ground upon which they base their motion to quash the return upon this notice is that since the rendition of said decree and its affirmance, and before the making of this motion and the application to the supreme court of the United States for said permission, to wit, on March 22, 1900, by an act of the general assembly of Kentucky, that day approved, containing an emergency clause, the charter of the defendant herein, Deposit Bank of Frankfort, was repealed absolutely, and that since then it has been and is now no longer a corporation liable to be sued or made defendant to a bill of review, and that since then they have been and now no longer are respectively president and attorney of said defendant.

If the effect of said act of March 22, 1900, is as claimed by said Hendrick and Chinn, it must necessarily follow that their motion to quash should be sustained, and the motion to file the bill of review should be overruled. It is well settled that, after a corporation ceases to exist absolutely, it cannot be sued, or made a party to a suit, no more than an individual can be after he dies.

Wat. Corp., § 434, says:

"A defunct corporation, like a natural person who dies, cannot be brought into court by process served upon persons who were officers or agents when the corporation was in existence."

2 Mor. Priv. Corp., § 1031, says:

"The dissolution of a corporation at common law not only means that the company has lost its franchises, and can no longer act in a corporate capacity,

but it implies that the corporation has wholly ceased to exist in legal contemplation, and will not be recognized as a corporate body for any purpose. It follows that suits brought by or against a corporation are abated by its dissolution, and a judgment purporting to be rendered against a corporation which is not in existence is a nullity."

In the case of Combes v. Keyes, 89 Wis. 297, 62 N. W. 89, 27 L. R. A. 369, 46 Am. St. Rep. 839, Cassoday, J., said:

"After the dissolution of a corporation, the power to proceed against it in an action is wholly divested, except as specially authorized by statute."

In the case of Phosphate Co. v. Perry, 20 C. C. A. 490, 74 Fed. 425, 33 L. R. A. 252, Pardee, Circuit Judge, in delivering the opinion of Fifth circuit court of appeals, said:

"That a dissolution of a corporation abates all suits against it is familiar law of the text-books."

In the case of Investment Co. v. Hughes (C. C.) 77 Fed. 855, Gilbert, Circuit Judge, said:

"The statute of this state gives a bare extension of life for a fixed period after the dissolution of the corporation. Without the statute, as we have seen, all corporations were defunct from the moment of their dissolution. The statute extends their existence for a further period for a stated purpose. At the expiration of that period it is the logic of the common-law rule that the corporation is as absolutely defunct as it would have been in the first instance had not its life been prolonged by the intervention of the statute."

Upon this ground he held that an Oregon corporation could not maintain an action after the dissolution of its charter, and after the expiration of five years, in which it might, under the statute of Oregon, bring suits and round up its affairs.

Mr. Thompson, in his work on Corporations (volume 5, § 6718), thus expresses the law in his usual vigorous style:

"Under the principles of the common law, excluding in this statement the principles of equity and the effect of saving statutes, the effect of the dissolution of a corporation is to put an end to its existence for all purposes whatsoever, and to destroy every one of its faculties, so that thereafter it can neither make nor take contracts, nor sue or be sued; and so that all debts to or from it become extinguished, and all actions by or against it abate; and so that its real property reverts to the grantors or donors thereof, or their heirs; and its personal property escheats to the crown or to the state. These principles illustrate at once the feebleness and the barbaric crudity of the common law, and expand into terror and jealousy with which corporations have been regarded by all classes of people from sovereign to populace in every country and in every age."

The principles of equity to which he refers do not have effect of saving the existence of the dissolved corporation, so that it can sue or be sued, but its liabilities, and the right to collect same out of its property, into whosesoever hands it may have passed, provided he is not a bona fide purchaser, as shown in section 6730. It would follow from this that a bill of review cannot be filed against a corporation to set aside a decree in its favor after it ceases to exist absolutely, because it is well settled that the party in whose favor a decree has been rendered, or his representatives, must be made parties defendant to the bill of review. 2 Beach, Mod. Eq. Prac., § 873, says:

"A decree cannot be set aside upon the ground of fraud, or for any other cause, without having all the parties to a decree before the court. So, in

a bill of review, it is indispensable that all the parties to the original decree should be included; and, if they be dead, their legal representatives must be made parties."

In the case of Friley v. Hendricks, 27 Miss. 412, a bill of review was filed to set aside a decree in favor of one Dinkins. The bill stated that Dinkins had died, and that his estate had been administered upon, and his administrator discharged, before the bill of review was filed. The only party defendant was the purchaser of the property involved in the decree, named Hendricks. On demurrer to the bill, it was held that it could not be maintained. The court said:

"A preliminary objection to the bill of review is raised here under the demurrer which is decisive of the case. This is that the bill does not make the complainant in the decree sought to be reversed, or his representatives, parties to the proceeding. The legal object and effect of a bill of review being to have the decree examined and reversed, it was formally held to lie only against those who were parties to the original bill (2 Barb. Ch. Prac. 94; Lube, Eq. 129), in analogy to a proceeding in error. It was afterwards extended so as to embrace other parties in interest. Still it is held to be indispensable that all the parties to the original decree should be included. Bank v. White, 8 Pet. 268, 8 L. Ed. 938; Story, Eq. Pl. § 420. And, if they are dead, their representatives must be made parties, as in other proceedings in error. The reason of this is manifest,—that, the proceeding being in its nature one to reverse the original decree, it would be inequitable to entertain such case without giving the party in whose favor the decree was rendered an opportunity to justify it. This, being a technical bill of review, must fall by the application of this principle."

Much more so cannot this bill be maintained without any party to the suit, which is the case if the defendant corporation has ceased to exist absolutely.

It is further well settled that Messrs. Hendricks and Chinn, on whom the motion for leave to file the bill has been served, have such standing in court that they can raise the question as to whether it is proper to permit the bill of review to be filed, which they have done, by their motion to quash the return upon the notice, and be heard upon it. In the case of Combes v. Keyes, 89 Wis. 297, 62 N. W. 89, 27 L. R. A. 369, 46 Am. St. Rep. 839, the former secretary of a defunct corporation intervened in a suit against that corporation, upon which service of summons had been had by order of publication, and moved that said service and order be set aside and held for naught. Upon his motion being denied, he appealed to the supreme court of Wisconsin, and it was held that he had a right so to intervene and appeal, and that his motion should be sustained. Cassoday, J., said:

"In Mumma v. Potomac Co., 8 Pet. 281, 8 L. Ed. 945, it was held that 'there is no pretense to say that a scire facias can be maintained, and a judgment had thereon against a dead corporation, any more than against a dead man.' In that case the attorneys of record for the corporation, at the time of the rendition of the original judgment, appeared, and suggested the death of the corporation after the rendition of such judgment, and alleged the same by way of a plea in abatement. The facts being admitted, the trial court gave judgment that the plaintiff take nothing by his writ of scire facias, and that judgment was affirmed by the supreme court of the United States. From the very nature of things, the dissolution or death of a corporation defendant, like the death of a party to a pending action, can only be brought to the attention of the court by some one other than the defunct corporation."

And again:

"We think it was competent for Dwight W. Keyes, who had been the secretary of the defunct corporation, to intervene, and inform the court of the facts which had worked a dissolution and death of the corporation."

It is further settled that the right to file a bill of review is not a matter of right, but of the discretion on the part of the court in which it is desired to file it, and that, therefore, a motion for leave to file it is necessary. And it would seem, if the bill cannot be maintained, that it is a proper exercise of discretion to refuse to grant the desired leave. The vital question, therefore, in the case is whether the existence of the defunct bank was put an end to absolutely by the repealing act of March 22, 1900. It is certain that, so far as that act itself was concerned, its existence was so put an end to by it. After it became a law, because of its emergency clause, the defunct bank no longer existed for any purpose whatever, so far as its terms were concerned. We do not understand that it is claimed that its existence for any purpose was preserved by the provisions of that act. Reliance is had upon the act of February 14, 1856, entitled "An act reserving power to amend or repeal charters and other laws." (1 Acts 1855–56, p. 15.) Sections 1 and 3 thereof are the well-known statutory provision by which power was reserved to the legislature to amend and repeal all charters and grants for corporations or amendments thereof granted after the passage of said act. Section 2 is in these words:

"That where any corporation shall expire or be dissolved or its corporate rights and privileges shall cease by reason of a repeal of its charter or otherwise, and no different provision is made by law, all its works and property and all debts payable to it shall be subject to the payment of debts owing by it, and then to distribution among the members according to their respective interests; and such corporation may sue and be sued as before, for the purpose of settlement and distribution as aforesaid."

It is conceded that, if section 2 of this act is still the law, then the defendant bank's existence has been preserved thereby for the purposes of the bill of review sought to be filed, because its charter was granted after that act.

Is, then, that section still in force? This act was re-enacted in the General Statutes of Kentucky, adopted by the act of April 22, 1873. Sections 1 and 3 thereof are contained in section 8, and section 2 thereof is contained in section 9 of chapter 68 of said revision, entitled "Legislature." This chapter contains in all 10 sections. In the revision of the Statutes of Kentucky after the adoption of the present constitution, amongst other acts passed was chapter 203 of the Acts of 1891–93, p. 919, approved May 16, 1893, and entitled "An act concerning the general assembly." This act is a substantial re-enactment of chapter 68 of the General Statutes, entitled "Legislature." It contains eight sections. The first five are the same as the first five of that chapter. The sixth section thereof is the same as section 8 of said chapter, which was a re-enactment of sections 1 and 3 of the act of 1856. The other two sections are entirely new. Sections 6, 7, 9, and 10 of said chapter 68, Gen. St., are omitted entirely from said latter act; and, as we have seen, section 9 thereof was a re-

enactment of section 2 of the act of 1856, and is the provision whose present existence as a law is under consideration. It was probably left out because it was thought that its subject-matter was covered by a provision of the act providing for the creation and regulation of private corporations enacted as a part of the same revision, and which will be hereafter considered. Did, then, the omission of section 9 of chapter 68 of the General Statutes from chapter 203 of the act of May 16, 1893, amount to a repeal of that section? Under the decisions of the court of appeals of Kentucky it must be held that it did. It was held that the adoption of the General Statutes had the effect of repealing any previous statutory provision relating to a subject treated therein under a separate title, and omitted therefrom because the provisions under said title must be regarded as containing all the statute law on that subject. Broaddus' Devisees v. Broaddus' Heirs, 10 Bush, 299; Parrish v. Ferguson, 83 Ky. 18. This same principle has been applied to the various general laws, comprehensive in character, prepared by the commissioners appointed under section 245 of the present constitution, and thereafter enacted by the legislature. Buchannon v. Com., 95 Ky. 334, 25 S. W. 265; Long v. Stone, 39 S. W. 836; Com. v. Newcomb (Ky.) 58 S. W. 445. In the case of Buchannon v. Com., the act so adopted, entitled "Crimes and Punishments," approved April 10, 1893, re-enacted sections 2 and 3 of an act of April 11, 1873, known as the "Kuklux Law," and omitted section 4 thereof. The question was whether that section was thereby repealed. It was held that it was. The ground upon which it was so held is well stated by Judge Eastin in the late case of Conley v. Com., 98 Ky. 125, 32 S. W. 285:

"It had adopted sections 2 and 3 of the act of 1873, and had expressly and purposely left out the other section, thereby showing an intention to repeal that much of the law on the subject. It legislated upon the subject embraced by the act of 1873, and it was reasonable to assume that it legislated fully on that subject."

In the case of Com. v. Newcomb it was held that a former statutory provision, which gave an alien the same right to acquire property in this state that citizens of Kentucky had by the laws of the government of which he was a citizen or subject, was repealed by the omission thereof from the act approved April 29, 1892, entitled "An act concerning citizens, expatriation, aliens." Hobson, J., said:

"In the revision of the statute laws of the state after the adoption of the new constitution, this act was omitted, and so was repealed by the act of April 29, 1892."

Chapter 203, approved May 16, 1893, was one of those laws so prepared and enacted. The provision in question was a part of the chapter of the General Statutes, entitled "Legislature," which must be treated as legislative declaration that it was germane to that subject, and in immediate connection with the rest of the statute of 1856. In the revision after the new constitution, as we have seen, a new act is adopted in relation to the same subject containing the other portion of the act of 1856, from which this statutory provision is omitted, and it is not elsewhere re-enacted. This must be treated as a repeal of all of chapter 68 not re-enacted by the later act. The compilers

of the Kentucky Statutes have so treated it by omitting the provision from said compilation.

We do not understand that it is claimed by counsel for complainants that this statutory provision is still in force in the form in which it was contained in the General Statutes and the act of 1856. It is contended by them, however, that it is substantially re-enacted by section 24 of article 1 of chapter 171 of the Acts of 1891–93 (page 612), entitled "An act providing for the creation and regulation of private corporations," which is the same as section 561, Ky. St. It is said on the other side that this section relates solely to corporations organized under that statute, and that the defendant was not organized thereunder. To this, perhaps, it might be responded that it is provided by section 36 of article 1 of said statute—same as section 573 of Kentucky Statutes—that "after the twenty-eighth day of September, 1897, the provision of this chapter shall apply to all corporations created or organized under the laws of this state, if said provision would be applicable to them if organized under this chapter." But the sole contingency on which that statutory provision applies—whether only to corporations organized under that statute, or, since September 28, 1887, to all corporations—is "when any corporation expires by the terms of the articles of corporation, or by the voluntary act of the stockholders." The expiration of defendant's existence as a corporation was due to the happening of neither one of these two contingencies, but solely and alone to the repealing act of the legislature, which with one blow put an end to its life. That provision, therefore, can have no application to this case.

It is contended further that this proceeding against defendant is authorized by the provision in section 1 of the act of 1856, section 8 of chapter 68 of the General Statutes, section 6 of chapter 203 of the Acts of 1891–93, and section 1987 of the Kentucky Statutes, which is in these words:

"That whilst privileges and franchises so granted may be changed or repealed, no amendment shall impair other rights previously vested."

But the rights here referred to are rights of the corporation and persons interested therein, not the rights of persons who have claims against the corporation. Those rights, so far as covered by the act of 1856, were protected by section 2 thereof, which has been repealed, as we have seen. Counsel for complainants cite the case of Smith v. Gower, 2 Duv. 17; Railroad Co. v. Griest, 85 Ky. 619, 4 S. W. 323. These cases decide that a corporation is not dissolved by parting with all its property, and that, notwithstanding such parting, it may sue or be sued; and on the equitable principles referred to by Mr. Thompson in his work on Corporations, in the quotation therefrom heretofore cited, its creditors may pursue its assets in the hands of its stockholders. This and nothing more. Here it is not claimed that the defendant has been dissolved by the distribution of its assets, but by the act of the legislature putting an end absolutely to its existence. The citations by counsel for complainants from Cook on Corporations likewise have reference to the rights of creditors of a corporation against its property after its dissolution.

It remains to be considered what was the effect of the action of the

supreme court granting the complainants permission to apply to this court for leave to file a bill of review. Can that action be construed as passing upon any of the questions heretofore considered, or upon this court's duty to give the leave sought? Notice of the motion for such permission was served upon Messrs. Hendrick and Chinn, and they appeared before that court, and moved to quash the return on the notice, and resisted the application upon the same grounds as here. Both motions were briefed by counsel on each side. The court, however, just made an order granting the motion for permission to apply to this court for leave to file a bill of review. It delivered no opinion, and did not act upon the motion to quash at all. As application had to be made to that court for such permission, it had certainly the power to pass upon those questions, and determine the complainants' right to file a bill of review. It had also the power to refrain from doing so, and grant the permission, leaving it to this court to pass upon those questions and determine complainants' right. And this is what we think was the effect of the order which it made, and no more. It was to the same effect as the order of the circuit court of appeals, First circuit, in the case of Watson v. Stevens, 3 C. C. A. 411, 53 Fed. 31, which was as follows, to wit:

"Ordered, that whereas, it appears from the suggestions of the counsel for the appellees, made in open court, and accompanied with a verified petition and affidavits, that the appellees conceive that they will have just cause for application for leave to file a bill of review, and to proceed with such bill, this court reserves to the appellee liberty to file such application and proceed thereon, and on such bill of review in the circuit court as the circuit court may determine; and this order shall form a part of the mandate in this cause, which shall issue forthwith."

There the right to file the bill of review was argued before the circuit court of appeals, but that court declined to pass upon it, and made the order quoted.

The motion to quash the return on the notice herein is sustained, and the motion for leave to file a bill of review is overruled.